THE PEOPLE OF THE STATE OF NEW YORK ex rel. JESSE LEWISOHN, Respondent, v. WILLIAM J. O'BRIEN, as Sheriff of New York County, et al., Appellants.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. JESSE LEWISOHN, Respondent, v. WILLIAM E. WYATT, as Justice of the Court of Special Sessions of the City of New York, Appellant.

1. CONSTITUTIONAL LAW—WITNESS IN ANY CRIMINAL CASE NOT COMPELLED TO GIVE ANY EVIDENCE AGAINST HIMSELF — WHEN DETERMINATION WHETHER OR NOT ANSWER WILL INCRIMINATE HIM RESTS WITH WITNESS—CONST. ART. 1, SEC. 6. Under section six of article one of the State Constitution, providing that no person "shall be compelled in any criminal case to be a witness against himself," he is not obliged to answer questions in any criminal case, either against himself or another party, when he states that his answers might tend to incriminate him; he is protected from being compelled to disclose the circumstances of his offense or the sources from which, or the means by which, evidence of its commission, or his connection with it, may be obtained or made effectual for his conviction, without using his answers as direct admissions against him; and except where the court can see that his refusal to answer is clearly a fraudulent device to protect a third party, and that the witness is in no possible danger of disclosing facts that would lead to his own indictment and conviction, he is his own judge as to whether or not he will answer.

2. PRIVILEGE OF WITNESS PROVIDED FOR BY SECTION 342 OF THE PENAL CODE NOT COEXTENSIVE WITH THAT AFFORDED BY CONSTITUTIONAL PROVISION. Section 342 of the Penal Code, providing that "No

person shall be excused from giving testimony upon any investigation or proceeding for a violation of this chapter upon the ground that such testimony would tend to convict him of a crime; but such testimony cannot be received against him upon any criminal investigation or proceeding," is not coextensive with the constitutional provision and does not afford the witness the protection contemplated thereby, in that it does not prevent the use of evidence against him which may be obtained through his testimony, but simply excludes such testimony.

3. Same. A witness produced by the prosecution before a magistrate on an information charging the defendant with keeping a gambling house may properly refuse to answer questions as to whether he had ever been in the place in question, upon the ground that his answers might tend to incriminate him, since the statute does not afford him the full protection accorded by the constitutional provision.

*People ex rel. Lewisohn* v. *O'Brien,* 81 App. Div. 51, affirmed.

(Argued June 4, 1903; decided October 20, 1903.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 10, 1903, which reversed an order of Special Term denying the relator's petition that he be discharged from arrest on writs of habeas corpus and certiorari and remading him to custody, and sustained such writs and directed that the relator be discharged.

The facts, so far as material, are stated in the opinion.

*William Travers Jerome, District Attorney (Howard S. Gans* of counsel), for appellants. Prior to the decision of this case in the court below it was settled beyond question in this state that a witness might be compelled to testify to incriminatory matter if he were guaranteed by statute that his answers could not be introduced in evidence against him in a subsequent criminal case. (*People ex rel.* v. *Kelly,* 24 N. Y. 74; *Lathrop* v. *Clapp,* 40 N. Y. 328; *People* v. *Sharp,* 107 N. Y. 427; *Gilpin* v. *Daly,* 59 Hun, 413; *Perrine* v. *Striker,* 7 Paige, 598; *People ex rel.* v. *Hyatt,* 172 N. Y. 198; *C. C. T. Co.* v. *K. R. R. Co.,* 154 N. Y. 495.). The decision in the *Hackley* case is sound in principle and the decisions *contra* in other jurisdictions proceed upon a mistaken theory of the history and· of the purpose of the constitutional provision,

that "no person shall be compelled in any criminal case to be a witness against himself." (*Counselman* v. *Hitchcock*, 142 U. S. 547; *Brown* v. *Walker*, 161 U. S. 591; *People* v. *Sharp*, 107 N. Y. 427; *People* v. *Gardner*, 144 N. Y. 119; *Matter of Davies*, 168 N. Y. 89.) The theory in *Counselman* v. *Hitchcock* has been discredited by the Supreme Court of the United States, and is contrary to the general body of legal reasoning upon the subject. (*Brown* v. *Walker*, 161 N. Y. 596; *Duffy* v. *People*, 26 N. Y. 588; *Matter of Tucker*, 5 City H. Rec. 164; *Matter of Jackson*, 1 City H. Rec. 28; *Matter of Stage*, 5 City H. Rec. 177; *Brester* v. *State*, 26 Ala. 107; *Murphy* v. *State*, 63 Ala. 1; *Bank* v. *State*, 84 Ala. 430; *Jones* v. *State*, 75 Ga. 825; *State* v. *Mortimer*, 20 Kan. 93.) It is established by the contemporaneous construction of the constitutional provision in question that a statute such as section 342 of the Penal Code was not considered obnoxious to its terms. (*Perrine* v. *Striker*, 7 Paige, 593.) The decision of the court below is subversive of the policy of this state, as evidenced by the continuous course of legislation for the past ninety years, and creates an obstacle to the orderly administration of justice which will inevitably lead to lawlessness and oppressive official action. (*People ex rel.* v. *Taylor*, 143 N. Y. 219.) The relator is not relieved from the obligation to answer by reason of the fact that his answer might tend to subject him to a penalty, since his testimony is by statute rendered unavailable for that purpose as well as for the purpose of criminal prosecution in its ordinary sense. (*Perrine* v. *Striker*, 7 Paige, 598; *Brown* v. *Walker*, 161 U. S. 598.)

*Alfred Lauterbach* and *P. J. Rooney* for respondent. The early rule in this state adopting a rigid and narrow construction of section 6 of article 1 of the Constitution is no longer in force. (*Counselman* v. *Hitchcock*, 142 U. S. 547; *People ex rel.* v. *Forbes*, 143 N. Y. 219; *Matter of Peck* v. *Cargill*, 167 N. Y. 391; *Kellogg* v. *Sowerby*, 32 Misc. Rep. 327; *Matter of Leich*, 31 Misc. Rep. 671;

**256**    People ex rel. Lewisohn *v.* O'Brien.    [Oct.,

Points of counsel.    [Vol. 176.

*People* v. *Lewis*, 14 Misc. Rep. 264; *Matter of Attorney-General*, 21 Misc. Rep. 101; *People ex rel.* v. *Nussbaum*, 55 App. Div. 245; *Lamson* v. *Boyden*, 160 Ill. 613; *Miskimins* v. *Shaver*, 58 Pac. Rep. 411.) The decision in the *Kelly* case is unsound in principle and proceeds upon a mistaken theory of the history and purpose of the constitutional provision. (*Collier* v. *Collier*, 4 Leonard, 194; *Emery's Case*, 107 Mass. 172; *Burroughs* v. *High Com.*, 3 Bulst. 48.) The decision of the United States Supreme Court in the case of *Counselman* v. *Hitchcock* has been expressly approved in all of the subsequent decisions of that court, and has been followed in most of the states of the Union, even though in many of the states it became necessary to overrule former decisions of their courts upon the same subject. (*Brown* v. *Walker*, 161 U. S. 591; *People* v. *Gardner,* 144 N. Y. 119; *Boyd* v. *U. S.*, 116 U. S. 616; *Wilson* v. *State*, 51 S. W. Rep. 916; *Ex parte Wilson*, 39 Tex. Cr. Rep. 630; *Matter of P. R. Com.*, 32 Fed. Rep. 250; *Matter of Comingore*, 96 Fed. Rep. 562; *United States* v. *N. Lead Co.*, 75 Fed. Rep. 94; *United States* v. *Bell*, 81 Fed. Rep. 836; *Ryder* v. *Bateman*, 93 Fed. Rep. 33; *United States* v. *Wong Quong Wong*, 94 Fed. Rep. 833.) The constitutionality of section 342 of the Penal Code cannot be established upon the principle of contemporaneous construction. (*Newell* v. *People*, 7 N. Y. 9; *People* v. *Allen*, 42 N. Y. 378–384; *Oakley* v. *Aspinwall*, 3 N. Y. 568; Story on Const. § 407; Cooley on Const. Lim. [6th ed.] 84; *People* v. *N. Y. C. R. R. Co.*, 24 N. Y. 485; *Boyd* v. *U. S.*, 116 U. S. 616; *People ex rel.* v. *Forbes*, 143 N. Y. 219; *Matter of Peck* v. *Cargill*, 167 N. Y. 391; *Perrine* v. *Striker*, 7 Paige, 598.) The decision of the court below is in accord with the public policy of our institutions and form of government. (*People* v. *Allen*, 42 N. Y. 378; *Oakley* v. *Aspinwall*, 3 N. Y. 547; *State* v. *S. H. Co.*, 109 Mo. 118.) The relator was justified in declining to answer the questions asked on the ground that his answers to the same might expose him to a penalty or forfeiture. (2 Philips on Ev. 936; 1 Greenl. on Ev. § 453;

2 Taylor on Ev. § 1453 ; Chase's Stephen's Digest of the Law of Evidence [2d ed.], 294 ; 29 Am. & Eng. Ency. of Law, 836 ; *Johnson* v. *Donaldson*, 18 Blatchf. 288 ; *Huntington* v. *Attrill*, 146 U. S. 657 ; *Bones* v. *Booth*, 2 W. Bl. 1226 ; *Brandon* v. *Pate*, 2 H. Bl. 308 ; *Read* v. *Stewart*, 129 Mass. 407 ; *Cole* v. *Groves*, 134 Mass. 471 ; *Rogers* v. *Decker*, 131 N. Y. 490 ; *Henry* v. *Salina Bank*, 1 N. Y. 83 ; *Livingston* v. *Tompkins*, 4 Johns. Ch. 431 ; *Livingston* v. *Harris*, 3 Paige, 533.)

BARTLETT, J.  In December, 1902, an information was presented to the Court of Special Sessions of the First Division of the city of New York, charging in due form that for the period beginning the first day of January, 1902, and ending the first day of December, 1902, one Richard A. Canfield was conducting a gambling house at No. 5 East 44th street, in the city of New York, and praying that subpœnas might issue in order that the matter be fully inquired into upon oaths of persons attending in obedience to such subpœnas.

Thereafter, at the request of the district attorney, the magistrate issued a subpœna addressed to the relator herein, requiring him to attend before him and to answer such questions as might be put to him on the information against Canfield.  The relator appeared and was duly affirmed, pursuant to law, and after stating upon examination that he had known the defendant Richard A. Canfield four or five years and that he had not been in the premises No. 5 East 44th street prior to December, 1899, was asked the following questions : " Q. Have you ever been in there in your life ?  Have you ever been in the premises No. 5 East 44th Street, in the City and County of New York ? "  These questions the relator refused to answer on the ground, among others, that they might tend to criminate him.

The district attorney thereupon promised the witness immunity, and called his attention to section 342 of the Penal Code as affording him complete protection.  The court there-

258          People ex rel. Lewisohn *v.* O'Brien.          [Oct.,

Opinion of the Court, per Bartlett, J.'          [Vol. 176.

upon directed the witness to answer, and the latter said, "I respectfully decline, judge." Thereupon a complaint was made by a deputy assistant district attorney, duly setting forth the facts, and thereon and on certain exhibits annexed, the magistrate issued a warrant for the arrest of the relator, charging him with a criminal contempt of court. The warrant was thereupon delivered to the appellant Gannon, a peace officer, who arrested the relator.

After various proceedings unnecessary at this time to consider in detail, Gannon, the peace officer, was served with a writ of habeas corpus, commanding him to bring the relator before Justice Scott of the Supreme Court, and a writ of certiorari was also obtained directed to Justice Wyatt of the Special Sessions. Upon the hearing of the issues an order was made dismissing the writs and remanding the relator to the custody from which he was taken. Upon appeal the Appellate Division reversed this order with a divided court.

The relator seeks to justify his refusal to answer under article one, section six, of the Constitution of this state, which provides that no person "shall be compelled, in any criminal case, to be a witness against himself."

It is insisted on behalf of the People that the witness is fully protected by section 342 of the Penal Code, and should have been compelled to answer. The section reads as follows: "No person shall be excused from giving testimony upon any investigation or proceeding for a violation of this chapter, upon the ground that such testimony would tend to convict him of a crime; but such testimony cannot be received against him upon any criminal investigation or proceeding."

The relator contends that this section does not afford him full protection, and is not as broad in its provisions as the Constitution. This constitutional provision is precisely the same in phraseology as the fifth amendment of the Constitution of the United States. The same language is also found, in substance, in many of the State Constitutions.

Early in the history of this court, in *People ex rel. Hackley* v. *Kelly* (24 N. Y. 74), this provision of the State Constitution

was construed, the court holding that it did not protect a witness in a criminal prosecution against another person from being compelled to give testimony which implicates him in a crime, when he has been protected by statute against the use of such testimony on his own trial.    Judge Denio said (pp. 82, 83): "It is perfectly well settled that where there is no legal provision to protect the witness against the reading of the testimony on his own trial, he cannot be compelled to answer. (*People* v. *Mather*, 4 Wend. 229, and cases there referred to.) This course of adjudication does not result from any judicial construction of the constitution, but is a branch of the common-law doctrine which excuses a person from giving testimony which will tend to disgrace him, to charge him with a penalty or forfeiture, or to convict him of a crime. It is of course competent for the legislature to change any doctrine of the common law, but, I think, they could not compel a witness to testify on the trial of another person to facts which would prove himself guilty of a crime without indemnifying him against the consequences, because, I think, as has been mentioned, that, by legal construction, the constitution would be found to forbid it. But it is proposed by the appellant's counsel to push the construction of the constitution a step further.    A person is not only compellable to be a witness against himself in his own cause, or to testify to the truth in a prosecution against another person, where the evidence given, if used as his admission, might tend to convict himself if he should be afterwards prosecuted, but he is still privileged from answering, though he is secured from his answers being repeated to his prejudice on another trial against himself.    It is no doubt true that a precise account of the circumstances of a given crime would afford a prosecutor some facilities for fastening the guilt upon the actual offender, though he were not permitted to prove such account upon the trial. The possession of the circumstances might point out to him sources of evidence which he would otherwise be ignorant of, and in this way the witness might be prejudiced. But neither the law nor the constitution is so sedulous to

screen the guilty as the argument supposes. If a man cannot give evidence upon the trial of another person without disclosing circumstances which will make his own guilt apparent, or at least capable of proof, though his account of the transactions should never be used as evidence, it is the misfortune of his condition and not any want of humanity in the law."

We thus have a clear interpretation of the constitutional provision which reads that "no person can be compelled, in any criminal case, to be a witness against himself," as follows : That the words "any criminal case" mean a criminal case against the witness; that the prohibition, "no person can be compelled  *  *  *  to be a witness against himself," is fully satisfied when the evidence of a witness taken on the trial of another person is held to be inadmissible on his own criminal prosecution; the fact that his evidence on the trial of another person may afford the public prosecutor some facilities for fastening the guilt upon himself does not permit him to be silent.

It is clear, if this case is to be regarded as containing a correct exposition of the constitutional provision under review, that the relator should have been required to answer the questions propounded to him, as his protection, alike under the Constitution and the statute, is confined to the single provision that his evidence cannot be received against him in any criminal investigation or proceeding.

The opinion in *People ex rel. Hackley* v. *Kelly* (*supra*) was written by a distinguished jurist, whose learning and ability have placed him among the great judges of this state who now rest from their labors.

It is with no little hesitation that this court feels constrained to adopt a less technical and more liberal interpretation of this brief provision of the Constitution.

As we have already pointed out, the fifth amendment to the Constitution of the United States contains the precise language of our State Constitution now under review.

In *Brown* v. *Walker* (161 U. S. 591, 606) the Supreme Court of the United States said :

" It is true that the Fifth Amendment to the Constitution of the United States does not operate upon a witness testifying in the state courts, as the first eight amendments to the Constitution of the United States are limitations only upon the powers of Congress and the Federal courts, and are not applicable to the several states, except so far as the Fourteenth Amendment may have made them applicable. (*Barron* v. *Baltimore,* 7 Peters, 243 ; *Fox* v. *Ohio,* 5 How. [U. S.] 410 ; *Withers* v. *Buckley,* 20 How. [U. S.] 84 ; *Twitchell* v. *Commonwealth,* 7 Wall. 321 ; *Presser* v. *Illinois,* 116 U. S. 252.) "

It, therefore, follows that while the case to which we are about to refer, of *Counselman* v. *Hitchcock* (142 U. S. 547), may not be binding as an authority upon this court, yet its reasoning is most persuasive and has been followed in several states of the Union whose Constitutions contain a similar provision to the one under consideration. (*Smith* v. *Smith,* 116 N. C. 386 ; *Ex parte Cohen,* 104 Cal. 524 ; *Ex parte Arnot Carter,* 166 Mo. 604 ; *Miskimins* v. *Shaver,* 58 Pac. Repr. [Wyo.] 411.     See, also, *Emery's Case,* 107 Mass. 172.)

In *Counselman* v. *Hitchcock* (*supra*) it was held that where a person was under examination before a grand jury, in an investigation into certain alleged violations of the Interstate Commerce Act, he is not obliged to answer questions where he states that his answers might tend to criminate him, although section 860 of the United States Revised Statutes provides that no evidence given by him shall be in any manner used against him, in any court of the United States, in any criminal proceeding.     The case before the grand jury was a criminal case.     The meaning of the constitutional provision is not merely that a person shall not be compelled to be a witness against himself in a criminal prosecution against himself, but its object is to insure that a person shall not be compelled, when acting as a witness in any investigation, to give testimony which may tend to show that he himself has committed a crime.

Mr. Justice BLATCHFORD, writing for the court, said (p. 562): "It is broadly contended on the part of the appellee that a witness is not entitled to plead the privilege of silence except in a criminal case against himself, but such is not the language of the Constitution. Its provision is that no person shall be compelled *in any* criminal case to be a witness against himself. This provision must have a broad construction in favor of the right which it was intended to secure. The matter under investigation by the grand jury in this case was a criminal matter, to inquire whether there had been a criminal violation of the Interstate Commerce Act. If Counselman had been guilty of the matters inquired of in the questions which he refused to answer, he himself was liable to criminal prosecution under the act. The case before the grand jury was, therefore, a criminal case. The reason given by Counselman for his refusal to answer the questions was that his answers might tend to criminate him, and showed that his apprehension was that, if he answered the questions truly and fully (as he was bound to do if he should answer them at all), the answers might show that he had committed a crime against the Interstate Commerce Act, for which he might be prosecuted. His answers, therefore, would be testimony against himself, and he would be compelled to give them in a criminal case. It is impossible that the meaning of the constitutional provision can only be that a person shall not be compelled to be a witness against himself in a criminal proceeding against himself. It would doubtless cover such cases, but it is not limited to them. The object was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime."

At page 564 the learned judge continues: "It remains to consider whether section 860 of the Revised Statutes removes the protection of the constitutional privilege of Counselman. That section must be construed as declaring that no evidence obtained from a witness by means of a judicial proceeding shall be given in evidence or in any manner used against him

or his property or estate in any court of the United States in any criminal proceeding or for the enforcement of any penalty or forfeiture. It follows that any evidence which might have been obtained from Counselman by means of his examination before the grand jury could not be given in evidence or used against him or his property in any court of the United States in any criminal proceeding or for the enforcement of any penalty or forfeiture. This, of course, protected himself against the use of his testimony against him or his property in any prosecution against him or his property in any criminal proceeding in a court of the United States. But it had only that effect. It could not, and would not, prevent the use of his testimony to search out other testimony to be used in evidence against him or his property in a criminal proceeding in such court. It could not prevent the obtaining and the use of witnesses and evidence which should be attributable directly to the testimony he might give under compulsion and on which he might be convicted, when otherwise, and if he had refused to answer he could not possibly have been convicted."

The court thereupon held that section 860 of the United States Revised Statutes is not co-extensive with the constitutional provision, and that it was a reasonable construction of the provision that the witness is protected from being compelled to disclose the circumstances of his offense or the sources from which or the means by which evidence of its commission or of his connection with it may be obtained or made effectual for his conviction without using his answers as direct admissions against him.

Judge Blatchford stated that the court could not yield assent to the views expressed by the Court of Appeals of New York in *People ex rel. Hackley* v. *Kelly* (*supra*).

We are of opinion that the construction given to the very clear and plain words of the Constitution in *Counselman* v. *Hitchcock* is reasonable, fair and accords a witness only such protection as the plain letter of the Constitution confers.

If this is not the proper construction the witness might be

required to disclose circumstances that would enable the public prosecutor to institute criminal proceedings against him wherein he might be convicted without reading his evidence taken in another case.

The language of Chief Justice Marshall in the Circuit Court of the United States for the District of Virginia (June, 1807), in *Burr's Trial* (1 Burr's Trial, 244), on the question whether the witness was privileged not to accuse himself, is as follows : " If the question be of such a description that an answer to it may or may not criminate the witness according to the purport of that answer it must rest with himself, who alone can tell what it should be, to answer the question or not. If in such a case he may say upon his oath that his answer would criminate himself the court can demand no testimony of the fact. * * * According to their statement (the counsel for the United States) a witness can never refuse to answer any question, unless that answer, unconnected with other testimony, would be sufficient to convict him of crime. This would be rendering the rule almost perfectly worthless. Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible, but a probable case, that a witness by disclosing a single fact may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing, but all other facts without it would be insufficient. While that remains concealed within his own bosom he is safe, but draw it from thence and he is exposed to a prosecution. The rule which declares that no man is compellable to accuse himself would most obviously be infringed by compelling a witness to disclose a fact of this description. What testimony may be possessed, or is obtainable, against any individual, the court can never know. It would seem, then, that the court ought never to compel a wit-

ness to give an answer which discloses a fact that would form a necessary and essential part of a crime which is punishable by the laws."

A clearer and more cogent statement of the rule it would be difficult to find.

It is insisted by the counsel for the respondent that *People ex rel. Hackley* v. *Kelly* was overruled in *People ex rel. Taylor* v. *Forbes* (143 N. Y. 219). In that case there was no statute protecting the witness in the use of his testimony, and he having refused to answer, on the ground that to do so would tend to criminate him, this court held that the witness was in such a case the judge of the effect of answers sought to be drawn from him, and that nothing short of absolute immunity from prosecution could take the place of the constitutional privilege.

It is true that there are many expressions in the opinion of the court indicating its tendency to depart from the strict rule laid down in *People ex rel. Hackley* v. *Kelly,* but the case is not precisely in point.

The respondent also cites *Matter of Peck* v. *Cargill* (167 N. Y. 391) as sustaining his contention that *People ex rel. Hackley* v. *Kelly* can be no longer regarded as authority.

It is sufficient to say of the case cited that the point now under consideration was not directly presented, but in the opinion *Counselman* v. *Hitchcock* is cited with approval as sustaining the failure of the holder of a liquor tax certificate to file a verified answer in proceedings under the Liquor Tax Law.

It is true in this case, as in the one last cited, that the general language of the opinion indicates the tendency of the court to depart from the rule laid down in *People ex rel. Hackley* v. *Kelly.*

The learned assistant district attorney insists that while the case of *Counselman* v. *Hitchcock* has never been actually overruled, the court has refused to extend the principle, and has repudiated entirely the reasoning on which it was founded. In support of this contention *Brown* v. *Walker* (161 U. S.

591) is cited. That case involved the construction of the act of 1893 in reference to producing books, papers, etc., before the interstate commerce commission. The court pointed out that this act was passed in view of the opinion of the court in *Counselman* v. *Hitchcock*, to the effect that section 860 of the United States Revised Statutes was not co-extensive with the constitutional provision. The court held in substance that the statute of 1893 was co-extensive with the Constitution in the immunity that it offered the witness, and that he was deprived of his constitutional right thereby and must answer the question.

The statement by way of criticism of *Counselman* v. *Hitchcock* is as follows (p. 600): " The danger of extending the principle announced in *Counselman* v. *Hitchcock* is that the privilege may be put forward for a sentimental reason, or for a purely fanciful protection of the witness against an imaginary danger, and for the real purpose of securing immunity to some third person, who is interested in concealing the facts to which he would testify. Every good citizen is bound to aid in the enforcement of the law, and has no right to permit himself, under the pretext of shielding his own good name, to be made the tool of others, who are desirous of seeking shelter behind his privilege."

It is doubtless true that cases may arise where the mere fact of the witness asserting that to answer the question would tend to criminate him would not be conclusive. Where the court can see that the refusal to answer is a mere device to protect a third party, and that the witness is in no possible danger of disclosing facts that would lead to his own indictment and conviction, an answer may be insisted upon.

The decision in *Brown* v. *Walker* (*supra*) in no way militates against the construction of the Constitution in *Counselman* v. *Hitchcock*. It merely argues that the rule might be used for improper purposes and to shield the guilty. Any general rule is subject to abuse, and the court will be always vigilant to see that it is not employed in the interests of fraud and to secure a failure of justice. It is clear

that in *Counselman* v. *Hitchcock* the rule was properly applied, and we accord to that decision our full approval.

This distinction is to be kept in mind as to the attitude of a witness before the court where complete statutory protection, co-extensive with the constitutional provision, exists, and where it is lacking.

In the former situation the witness is deprived of his constitutional right of refusing to answer.

The point was decided by this court in *People* v. *Sharp* (107 N. Y. 427), and by the Supreme Court of the United States in *Brown* v. *Walker* (161 U. S. 591). We adhere to the point thus decided.

In the latter situation, where statutory immunity does not exist, which was dealt with by Chief Justice Marshall in language already quoted (1 Burr's Trial, 244), it rests with the witness whether he will answer or not, except, as we have pointed out, where the refusal is clearly a fraudulent device to protect a third party.

In thus extending the rule, as hitherto laid down by this court, we are persuaded that the complete immunity sought to be afforded the citizen by the Constitution from being a witness against himself in any criminal case is fully secured. The evolution of this right has been slow, indeed, since the days of the Star Chamber in England, when defendants, on a refusal to be sworn against themselves, were whipped at the cart's tail and pilloried; had ears cut off and noses slit; were fined enormous sums and imprisoned for years.

The methods of the seventeenth century were long since abandoned, but the desire to elicit from a suspected or accused person evidence that would send him to the cell or the scaffold unfortunately survives, and this court has, in recent years, been called upon to condemn on several occasions modes of procedure having that end in view.

In the case at bar, in view of the principles of law discussed, the relator was justified in refusing to answer the questions propounded to him, on the ground that the answers would tend to criminate him.

It is quite impossible for the court to say to what extent the witness, if he answered, would be criminated or placed in jeopardy. He might be subjected to proceedings involving penalty or forfeiture; he might be tried and convicted as a common gambler, which is declared by statute to be a felony. All this might be accomplished without using his evidence against him, if given herein.

We assume, as did the Appellate Division, that it is not contended by the prosecution that the questions which the relator refused to answer were preliminary in character, but rather that it is conceded by both parties that they are so framed as to call for a decision on the merits.

The order appealed from should be affirmed, with costs, the writs sustained and the relator discharged.

GRAY, J. What hesitation I have, in agreeing to an affirmance, is because the effect of our decision will be to change a rule of construction, which was early laid down in this state in *People ex rel. Hackley* v. *Kelly,* and to overrule the authority of that case. I find no decision of this court which has gone that far. But the rule of that case, being one of evidence, or of procedure, may be changed, and should be changed, if not consistent with the enjoyment of the full measure of the citizen's constitutional rights. It is my judgment that the reasoning of the opinion of the United States Supreme Court in *Counselman* v. *Hitchcock* is more convincing, in giving a construction to the language of the constitutional clause, than is that of this court, as expressed in its opinion in the *Hackley* case. I, therefore, am willing to place this court in accord with the later expressed views of the federal tribunal. I think that the words " in any criminal case," which are used in the constitutional clause, are entitled, when we consider the moving principle for its incorporation into the fundamental law of the state, to a broader construction than was accorded to them in the *Hackley* case.

If the interests of the People are deemed to require it, it is, of course, quite competent, and proper, for the legislative

body to provide for an exemption of the witness from liability to prosecution, as broad in its effect as is the constitutional privilege.

PARKER, Ch: J., O'BRIEN, HAIGHT, CULLEN and WERNER, JJ. (and GRAY, J., in memorandum), concur with BARTLETT, J.
   Order affirmed.