(162 App. Div. 517)

### PEOPLE v. ANHUT. (No. 5747.)

(Supreme Court, Appellate Division, First Department. May 29, 1914.)

1. STATES (§ 41*)—POWER OF GOVERNOR—EXAMINING COMMITTEE.

The Governor has power to appoint a committee to investigate state departments, and the committee so appointed has authority to issue subpœnas and compel the attendance of witnesses, and one appearing before the committee without a subpœna, after learning that a subpœna for his attendance has been issued, is not a voluntary witness.

[Ed. Note.—For other cases, see States, Cent. Dig. § 47; Dec. Dig. § 41.*]

2. CRIMINAL LAW (§ 694*)—TRIAL—OBJECTIONS TO EVIDENCE—IMMUNITY FROM PROSECUTION.

There is a distinction between the right to complete immunity from prosecution for crime to one who has testified and a statutory or constitutional provision that testimony shall not be used against him in a subsequent prosecution, and whether one who has given testimony in another proceeding is deprived of the statutory right that such testimony shall not be used against him can only be determined by objections to evidence on his trial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1631, 1632; Dec. Dig. § 694.*]

3. CRIMINAL LAW (§ 42*)—IMMUNITY FROM PROSECUTION—STATUTORY PROVISIONS.

One appearing as a witness before an investigating committee, and denying while testifying that he has not been directly or indirectly connected in any way with any bribery or any attempt to bribe a public official, is not within the protection of Penal Law (Consol. Laws, c. 40), § 381, providing that one testifying to the giving of a bribe which has been accepted shall not thereafter be liable to prosecution for that bribery, but may plead or prove the giving of testimony accordingly in bar of such indictment or prosecution.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 45–48; Dec. Dig. § 42.*]

4. CRIMINAL LAW (§ 1141*)—APPEAL—BURDEN OF PROOF OF ERROR—IMMUNITY FROM PROSECUTION.

One asserting that testimony given by him before an investigating committee has been used on his trial for crime in violation of his statutory and constitutional right has the burden to show that whatever incriminating facts were extorted from him on his examination were used against him on the trial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3014, 3015, 3020, 3022, 3023; Dec. Dig. § 1141.*]

5. CRIMINAL LAW (§ 698*)—PRIVILEGE OF WITNESS—WAIVER—FAILURE TO OBJECT.

Where one on trial for attempted bribery did not, during his trial, suggest that testimony previously given to an investigating committee was being used against him on the trial, he thereby waived his statutory privilege.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1651–1654; Dec. Dig. § 698.*]

6. WITNESSES (§ 305*)—IMMUNITY—COMPELLING ACCUSED TO BE A WITNESS AGAINST HIMSELF.

Where one on trial for attempted bribery had previously testified before an investigating committee, and when testifying in his own behalf gave the same testimony without raising any question of privilege or immunity, his rights, guaranteed by Const. art. 1, § 6, providing that no per-

son shall be compelled in any criminal case to be a witness against himself, were not violated.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1053–1057; Dec. Dig. § 305.*]

**7. CRIMINAL LAW (§ 42*)—IMMUNITY FROM PROSECUTION—PRIVILEGE OF WITNESS.**

Where there is no express provision of law granting immunity, the fact that one charged with crime has testified in another action or proceeding to facts tending to convict him cannot be the basis of a claim for immunity, and, to justify the court in granting immunity, the statute must clearly prevent any prosecution against the witness for a crime on account of the facts to which he testified, or which were under investigation in the proceeding in which he testified.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 45–48; Dec. Dig. § 42.*]

**8. CRIMINAL LAW (§ 42*) — IMMUNITY FROM PROSECUTION — CONSTITUTIONAL PROVISIONS.**

Const. art. 13, §§ 2–4, defining bribery and declaring that no person offering a bribe shall, on any prosecution of the officer for receiving the bribe, be privileged from testifying, and he shall not be liable to civil or criminal prosecution therefor, and any person charged with receiving a bribe, or with offering a bribe, shall be permitted to testify in his own behalf in any civil or criminal prosecution therefor, prescribes the immunity that shall be given to one who has offered a bribe, and the Legislature may not extend that immunity, and under the Constitution the immunity is limited only to the person offering a bribe when he has testified in a criminal proceeding against the officer accepting it, in which case he shall not be liable to a civil or criminal prosecution therefor.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 45–48; Dec. Dig. § 42.*]

**9. BRIBERY (§ 11*)—ATTEMPTED BRIBERY—EVIDENCE—SUFFICIENCY.**

Evidence *held* to sustain a conviction of attempted bribery of a public official.

[Ed. Note.—For other cases, see Bribery, Cent. Dig. § 10; Dec. Dig. § 11.*]

Appeal from Criminal Term, New York County.

John N. Anhut was convicted of attempted bribery, and from a judgment of conviction, and from an order denying a new trial and in arrest, he appeals. Affirmed.

See, also, 158 App. Div. 883, 142 N. Y. Supp. 1134; 148 N. Y. Supp. 1134.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

Morgan J. O'Brien, of New York City, for appellant.
Robert C. Taylor, of New York City, for the People.

HOTCHKISS, J. The defendant was indicted and convicted of attempted bribery of a public official in violation of section 378 of the Penal Code. Briefly, the facts are as follows: One Thaw, having been indicted for murder and acquitted as insane, was committed to and at the time of the occurrences in question was confined in the Matteawan State Hospital, of which one Russell was medical superintendent, and as such was invested with power, subject to certain limitations, to discharge Thaw. On or about November 2, 1912, Thaw

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

agreed to pay defendant $25,000 provided he was discharged before January 1, 1913, but if discharged thereafter, and before July 1st, Thaw was to pay only $12,500, and if discharged after July 1st, he was to pay nothing. Subsequently Thaw caused to be delivered to defendant $5,000 in cash and shares of a well-known investment stock valued at $20,000, and defendant gave to Thaw his two several receipts for $12,500, each dated November 20, 1912. Thaw was never discharged, and concededly the defendant returned to him $12,500, or the equivalent thereof, on or about January 1, 1913; the defendant's trial and conviction having occurred prior to July 1, 1913, the record does not show whether the remaining $12,500 was or was not returned. The people's version of the transaction was that the money and shares delivered by Thaw to defendant were so delivered in pursuance of a corrupt bargain made by him with Russell, who, in consideration of all or a portion of the bribe, was to discharge Thaw from custody, and that the defendant was the conduit through which it was arranged that Russell's share was to be paid. The defendant's explanation of the transaction was that the moneys and shares were received by him in advance as a fee for his services in proceedings which Thaw retained him to institute for his discharge. Although counsel for the defendant contends that the evidence adduced by the people was not sufficient to justify a verdict of guilty, I am satisfied that on the merits the verdict was right. The principal ground urged for reversal is that the defendant was entitled to immunity for the crime of which he was convicted.

It appeared that prior to defendant's indictment, the Governor, under section 8 of the Executive Law (Consol. Laws, c. 18), had appointed a committee to investigate certain state departments, including the State Hospitals for the Insane, and that this investigation included an examination into the truth of certain rumors concerning the existence of a conspiracy to release Thaw by bribery. Russell testified as a witness before the committee, and swore that the defendant had sought to bribe him. By direction of the committee, subpœnas were issued to secure defendant's attendance before it as a witness. The defendant, having learned that subpœnas had been so issued, caused his counsel to appear before the committee, and it was arranged that defendant should appear and be sworn without being subpœnaed. In pursuance of this arrangement defendant subsequently appeared and testified under oath. When arraigned on the indictment in question, defendant attempted to file a special plea, in which he claimed immunity on the ground that he had been compelled to testify before the committee as to the subject-matter of the indictment. The court refused to accept the plea, and directed a plea of not guilty be entered, whereupon the defendant moved to quash the indictment on the same ground as that on which his special plea was based, which motion was denied. The defendant also unsuccessfully moved to have his aforesaid special plea substituted for the plea of not guilty, and by various other motions the defendant unavailingly sought to avail himself of his alleged immunity. The court based its rulings adverse to the defendant on the ground that the question of immunity was one to be raised and presented at the trial.

[1] Although the learned district attorney does not concede that defendant was not an involuntary witness before the committee, I think it clear that he was. The power of the Governor to appoint a committee, and the authority of the latter to issue subpœnas and compel the attendance of witnesses, is not denied; the circumstances therefore under which defendant gave his testimony show that it was not voluntarily given. People v. Sharp, 107 N. Y. 427, 445, 14 N. E. 319, 1 Am. St. Rep. 851; U. S. v. Armour (D. C.) 142 Fed. 808, 822, 823. But this question is not material.

[2, 3] For manifest reasons, to which I shortly refer, defendant does not assert any claim to immunity on article 13, § 3, of the Constitution; he rests his case on section 381 of the Penal Law (Consol. Laws, c. 40, formerly Penal Code, § 79), which reads as follows:

"Sec. 381. Offender a Competent Witness. A person offending against any provision of any section of this chapter relating to bribery and corruption, is a competent witness against another person so offending, and may be compelled to attend and testify upon any trial, hearing, proceeding, or investigation, in the same manner as any other person. But the testimoy so given shall not be used in any prosecution or proceeding, civil or criminal, against the person so testifying. A person so testifying to the giving of a bribe which has been accepted, shall not thereafter be liable to indictment, prosecution, or punishment for that bribery, and may plead or prove the giving of testimony accordingly, in bar of such an indictment or prosecution."

It will be seen that the second sentence of the section provides that "testimony so given shall not be used in any prosecution," and that the last sentence provides for immunity to one who may testify "to the giving of a bribe which has been accepted." The distinction between the right to complete immunity to one who has testified, and a provision whether constitutional or statutory, that testimony "shall not be used" against the witness in any subsequent prosecution, is plain, and has been judicially determined. State v. Lloyd, 152 Wis. 24, 139 N. W. 514; Commonwealth v. Cameron, 229 Pa. 592, 597, 79 Atl. 169. It is obvious, therefore, that the action of the court in denying defendant's motions to which I have referred, and holding that the question of immunity was one to be raised by objections to evidence offered on the trial, was proper, unless defendant was protected by the last paragraph of section 381. People v. Cummins, 153 App. Div. 93, 112, 113, 138 N. Y. Supp. 517; affirmed, 209 N. Y. 283, 103 N. E. 169. That he was not so protected is patent, because it is undisputed that he did not testify before the committee "to the giving of a bribe which had been accepted." On the contrary, it is conceded that he denied that he had been directly or indirectly in any way connected with any bribery or any attempt to bribe Russell.

[4] The question still remains whether, on the trial of the indictment, the people made improper use of the testimony given by the defendant before the committee. The defendant's position, as stated in the brief of his counsel is, "that his constitutional rights were invaded by his being compelled to be a witness against himself, in the sense of his evidence having been used to work up the case against him," and that under the theory of the Lewisohn Case (People ex rel. Lewisohn v. O'Brien, 176 N. Y. 253, 68 N. E. 353), he had been compelled to

disclose to the committee circumstances that enabled the people to complete the subsequent criminal case against him; in short that he had been compelled by that testimony to supply "the missing links in the facts from which the district attorney later drew the inference of guilt." How this testimony was used against him upon the trial, according to counsel, is that the court in charging the jury said that, as the testimony of Thaw was that of an accomplice, it could not alone be the basis of a conviction, but that he (the court) left it to the jury to say "whether or not the defendant's testimony * * * and the receipts which the defendant gave to Thaw for the money furnish corroboration of the testimony of Thaw." From this counsel argues that, inasmuch as the defendant had given before the investigating committee the same testimony concerning his conversations with Thaw, the receipts, etc., as he gave when sworn as a witness in his own behalf on the trial, he had by his testimony before the committee informed the district attorney as to "just what he might count upon to put into the case to strengthen it through the cross-examination of the defendant himself," and thus had indirectly, but effectively, been compelled to testify against himself. The district attorney takes issue with this statement, and asserts that in no way, either before the grand jury or on the trial, was there any use made of any of defendant's testimony before the committee, and that the people's case was wholly proved by Thaw and the other witnesses. Undoubtedly the burden is on the defendant to show that whatever incriminating facts or circumstances he claims were extorted from him on his examination before the committee, and were used against him on the trial, were so extorted and discovered, and were not made known through other witnesses, facts or circumstances. See State v. Lloyd, supra. In this, a careful examination of the record impels the conclusion that he utterly failed.

[5] It would seem to me, however, a sufficient answer to defendant's argument that no point such as is now urged was made on the trial, after the taking of testimony began, and that the record discloses, neither by way of objection, exception, nor otherwise, any suggestion to that effect. The appellant took the stand in his own behalf, and was examined and cross-examined, and, neither upon such examination nor upon the examination of any other witnesses, or the offer of any exhibit, was it argued or objected that the defendant's testimony before the committee was being used against him. It is plain that the objection was one which could be waived, and should be held to have been waived if the entire record fails to disclose anything to show that it was asserted.

The defendant's exceptions to the admission and exclusion of evidence show no error, and are not of sufficient importance to require discussion.

The judgment should be affirmed. All concur.

INGRAHAM, P. J. I concur in the opinion of my Brother HOTCH-KISS. The indictment charged that on the 16th day of December, 1912, the defendant did feloniously offer to one John W. Russell, a public officer executing the functions of a public office, to wit, medical superintendent of the Matteawan State Hospital, a bribe of $20,000, with

the intent to influence the said John W. Russell as a public officer in the exercise of his power and functions upon and concerning the detention of one Thaw in the said Matteawan State Hospital. The defendant was tried at a Trial Term of the Supreme Court before Mr. Justice Seabury, which trial resulted in a verdict of guilty, as charged in the indictment.

The defendant offered a special plea which alleged that prior to the indictment the Governor of the state, under and by virtue of section 8 of the Executive Law, appointed three persons to examine and investigate the management and affairs in all boards, departments, bureaus, or commissions of the state; that thereafter the said three persons named accepted said appointment, and commenced an investigation of the affairs of the Matteawan State Hospital for the Criminal Insane; that during that investigation Dr. John W. Russell was subpœnaed to attend before the said persons appointed by the Governor, was sworn and examined regarding the affairs of the said institution, and, among other things, testified that this defendant had offered him a bribe of $20,000 in connection with an effort to liberate Thaw from said institution, Thaw at said time being an inmate thereof; that the said three persons so investigating the affairs of the Matteawan State Hospital issued a subpœna commanding the attendance of this defendant before them to give evidence in connection with the investigation; that the defendant, learning of the issuance of this subpœna, agreed to appear before the three investigators, and on the 26th day of February, 1913, defendant did appear before said investigators at Albany and, being duly sworn, gave testimony in connection with said investigation, in which, among other things, he testified that the said Dr. Russell had demanded of him the sum of $20,000 in connection with the efforts to liberate Thaw, but that he, the defendant, had refused to pay said sum; and he denied that he had offered Russell any bribe, or had in any way attempted to bribe him. In his testimony before these investigators annexed to the said plea, the defendant testified that he was admitted to the bar of the state of New York some time in October, 1912, and that he became acquainted with Russell in June or July, 1912. The substance of the defendant's testimony before the investigators was that he denied ever having offered Russell any money, or attempting to bribe Russell in any way, but alleged that Russell asked him for a bribe, which the defendant refused. The court refused to allow this plea to be interposed, upon the ground that there was no provision of law for the interposition of such a plea. The defendant then on the same formal plea and the facts therein alleged moved to quash the indictment, which motion was also denied. The defendant then refused to plead, the court ordered a plea of not guilty to be entered, and upon these facts the defendant claims that he was entitled to immunity from prosecution on a charge of bribery or attempt to bribe Dr. Russell by reason of his testimony before these investigators. The question of the defendant's immunity is really the only serious question presented on this appeal, as we all agree that the evidence amply justified the jury in finding the defendant guilty, and that no error was committed on the trial which would justify a reversal of the judgment.

The claim of immunity is based upon the provisions of section 381 of the Penal Law, which provides:

"A person offending against any provision of any section of this chapter relating to bribery and corruption is a competent witness against another person so offending, and may be compelled to attend and testify upon any trial, hearing, proceeding, or investigation, in the same manner as any other person. But the testimony so given shall not be used in any prosecution or proceeding, civil or criminal, against the person so testifying. A person so testifying to the giving of a bribe which has been accepted, shall not thereafter be liable to indictment, prosecution or punishment for that bribery, and may plead or prove the giving of the testimony accordingly, in bar of such indictment or prosecution."

This section is contained in article 34 of the Penal Law entitled "Bribery and Corruption." The defendant apparently was indicted under section 378 of that article, and so was a person offending against one of the sections of the chapter relating to bribery and corruption.

In considering the question presented, certain provisions of the state Constitution should be borne in mind. Section 6 of article 1 of the Constitution expressly provides that no person shall be compelled in any criminal case to be a witness against himself, and this provision is to be read in connection with sections 2 and 3 of article 13 of the Constitution. By these sections the Constitution itself undertook to define the crime of bribery and an offer or promise to bribe. Section 2 provides that any person who—

"shall receive or consent to receive, directly or indirectly anything of value or of personal advantage, or the promise thereof, for performing or omitting to perform any official act, or with the express or implied understanding that his official action or omission to act is to be in any degree influenced thereby, shall be deemed guilty of a felony."

Section 3 provides that:

"Any person who shall offer or promise a bribe to an officer, if it shall be received, shall be deemed guilty of a felony and liable to punishment, except as herein provided. No person offering a bribe shall, upon any prosecution of the officer for receiving such bribe, be privileged from testifying in relation thereto, and he shall not be liable to civil or criminal prosecution therefor, if he shall testify to the giving or offering of such bribe. Any person who shall offer or promise a bribe, if it be rejected by the officer to whom it was tendered, shall be deemed guilty of an attempt to bribe, which is hereby declared to be a felony."

[6] It is evident that article 34 of the Penal Law was intended to carry into effect this provision of the Constitution. It is rather more extensive than the constitutional provision, because it gives the immunity to any person offending against any section of the chapter, which includes offenses which would not be included within the provisions of these sections of the Constitution. It is quite plain that in this case there was no violation of section 6 of article 1 of the Constitution, which provides that a person shall not be compelled in any criminal case to be a witness against himself. No use was made of the defendant's testimony given before the Governor's commissioners which would violate that provision of the Constitution.

In considering the claim of the defendant in this case, we must clearly keep in mind the particular questions which have been pre-

sented to the courts in the various cases that are cited and relied upon by the defendant. In one class of cases the question that was presented was whether the defendant was compelled to testify against himself in violation of the provisions of the Constitution to which attention has been called. That has arisen when he has objected to testifying, and the question has been presented to the court as to whether he was or was not to be compelled to testify. That class is illustrated by the case of People ex rel. Lewisohn v. O'Brien, 176 N. Y. 253, 68 N. E. 353. In that case the relator was called as a witness before a magistrate, upon an information laid before the magistrate by the district attorney against one Canfield, accusing Canfield of maintaining certain premises for gambling. The witness objected to answering upon the ground that his testimony would tend to criminate him. The district attorney promised immunity from prosecution if the witness would answer, and read to him section 342 of the Penal Code. The witness, however, still declined to answer, whereupon the relator was committed for contempt. The relator was brought before a Justice of the Supreme Court on a writ of habeas corpus, who dismissed the writ, but on appeal to this court (81 App. Div. 51, 80 N. Y. S. 816) that order was reversed, and the relator discharged, which on appeal to the Court of Appeals was affirmed (176 N. Y. 253, 68 N. E. 353). And both in this court and in the Court of Appeals, following the case of Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, it was held that it was not sufficient that the evidence that he should give could not be used against him, but that to justify the court in compelling him to answer, it must appear that the witness was protected from being compelled to disclose the circumstances of his offense, and the sources from which or the means by which evidence of its commission or his connection with it might be obtained or made effectual for his conviction, without using his answer as direct admissions against him.

Another class of cases is where the people have attempted to use admissions or statements made by a defendant in a criminal proceeding that he had been compelled to give in an investigation concerning charges against himself or others, under the provision that the testimony of the witness so testifying shall not be used against him. And one of the cases in which that question was presented is People v. Sharp, 107 N. Y. 427, 14 N. E. 319, 1 Am. St. Rep. 851.

The third class of cases involves the question here presented, as to the immunity from punishment for a crime to which a person guilty of a crime is entitled in consequence of his having testified in an action or proceeding in relation to the facts upon which his conviction was based, an illustration of which is the case now before us.

[7] It is quite evident from the nature of the question that the authorities in determining the first two classes or questions that have been referred to have no relation to the question of immunity. Whether or not a witness is to be compelled to testify in a proceeding or investigation depends upon quite different principles than a claim of immunity from conviction of a crime with which he is charged, because of the fact that he has testified in some other proceeding or investigation. The general rule in all civilized communities is that persons who have committed crimes subject themselves to the punishments

provided by law therefor; and, to establish immunity from conviction of a crime, the offender must bring himself clearly within some provision of law which grants such immunity. If there is no express provision of law granting immunity, the fact that he testified in another action or proceeding to facts which would tend to convict him of the crime cannot be the basis of a claim for immunity. Nor does he obtain immunity because of a provision of law that the evidence which he gave in the other action or proceeding in which he has testified shall not be used against him in any criminal proceeding which involves the witness in a prosecution for a crime or for a penalty or forfeiture. To justify the court in granting such immunity, the statute must clearly prevent any prosecution against the witness for a crime on account of the facts and circumstances as to which he testified, or which were under investigation in the proceeding in which he was called as a witness. Nor, when a claim of immunity is made, is it any concern of the court as to whether the defendant could have been compelled to testify in the proceeding in which he was called as a witness. The sole question is, Does the statute give him immunity from punishment for the crime with which he is charged because of the fact that he appeared and testified in the other proceeding or investigation upon which the claim for immunity is based? The testimony upon which the defendant in this case relied was given, as before stated, before certain commissioners appointed by the Governor to investigate the state institutions, including the Matteawan State Hospital for the Criminal Insane. It is alleged that Dr. Russell, the superintendent of that asylum, testified that he had been offered a bribe by the defendant, and that the commissioners had issued a subpœna to require the defendant to appear before them and give testimony as to the transactions about which Dr. Russell had testified. He appeared before that commission, apparently without coercion, was sworn as a witness, contradicted Dr. Russell's testimony, and swore he was innocent of any offense. Subsequently he was indicted by the grand jury of the county of New York, charged with offering Dr. Russell a bribe, and now claims he is immune from punishment for offering that bribe because he testified before the commission that he was not guilty.

[8] As before stated, the Constitution has made an offer or promise to bribe, if it be rejected by the officer to whom it was tendered, a felony. It provides no immunity for any person who should be guilty of that offense, but the fundamental law of the state makes bribery or an offer or promise of a bribe a crime, and apparently it is the only crime that is created by the Constitution, except the misdemeanor provided for by section 5 of the same article. Section 3 of the article which makes this offer or promise to bribe a felony provides for a case where the offer is accepted by the officer. It is there prescribed that a person who offers or promises a bribe to an officer, if it shall be received, is guilty of a felony. But there is a limitation which follows—that such a person offering or promising a bribe shall not be privileged from testifying in relation thereto upon a prosecution of the officer for receiving such bribe, and if he so testifies he shall not be liable to civil or criminal prosecution therefor. The Constitution there steps in and itself provides the immunity that shall be given to a per-

son who has offered or promised a bribe to a public officer, and I do not see how the Legislature has any power to extend that immunity beyond that which the Constitution itself has provided. There is no such provision of immunity for a person who should offer or promise a bribe to an officer if the bribe be rejected, but any person who makes such an offer or promise is guilty of an attempt to bribe, which is declared to be a felony. As before stated, we have not to do in that case with the question as to how far this provision limits the provision in section 6 of article 1 of the Constitution, that a person shall not be compelled in a criminal case to be a witness against himself. We have not the question as to whether any testimony that the defendant had given in an investigation could be received against him as evidence upon the trial of this offense. We have a claim here that, because he did testify in an investigation instituted by the Governor that he was not guilty of the crime, he is immune from punishment when proved guilty, a claim which, if allowed, would seem to be in direct violation of the constitutional provision that any person who should offer or promise a bribe, if it be rejected by the officer to whom it was tendered, is guilty of a felony.

When the Constitution undertook to regulate this subject of bribery and attempt to bribe, and punishment therefor, and to prescribe that the persons who should be guilty of a violation of its provisions were guilty of a felony, it seems to me it took away from the Legislature any power to limit or restrict the punishment which it provides for those who are guilty of violating its express provisions. I do not understand upon what principle it can be said that an act of the Legislature which attempted to repeal the express provisions of the Constitution making an act a felony is valid. The people by their Constitution have acted. They have provided that a person committing this act shall be guilty of a felony, and certainly the Legislature has no power to say that a person guilty of the act shall not be convicted and punished as provided for by the Constitution. The Constitution itself has provided under what conditions a person offending against the constitutional provision shall have immunity, and the mandate of the Constitution is supreme. The Constitution, in section 4 of the article, provides that any person charged with receiving a bribe, or offering or promising a bribe, shall be permitted to testify in his own behalf in any civil or criminal prosecution therefor. Certainly it cannot be said that the Legislature could pass an act prohibiting a person charged with receiving or offering a bribe from testifying in his own behalf. The subject itself has been taken by the people, and by their special mandate they have provided that certain acts shall be a crime and shall be punished, with a single exception, that when the person offering the bribe has testified in a criminal proceeding against the officer accepting it, he shall not be liable to a civil or criminal prosecution therefor if he shall testify to the giving or offering of such bribe; and as I understand this constitutional provision, that is the only immunity which can be given to a person guilty of either offering or receiving a bribe.

If this is the proper construction of the Constitution, it is quite plain that, if possible, we should construe any legislative provision giving immunity in such a way as to make it in accordance with the express

commands of the Constitution, or, if it appears that the Legislature has gone beyond the power given it by the Constitution to legislate upon this subject of immunity, so far as it has attempted to go beyond the power granted, such legislation would be void as violating the constitutional prohibition. But it is quite clear that this section 381 of the Penal Law, so far as this defendant is concerned, does not afford him immunity. As before stated, we have nothing to do with the question as to whether or not this defendant could have been compelled to testify before the commission if he had refused or interposed his privilege as a witness, nor have we anything to do with the question as to whether or not his testimony before the commission could be received against him on the trial of the indictment for offering a bribe to Russell. The immunity that is offered by section 381 of the Penal Law to a person so testifying is, by its express terms, confined to a person "testifying to the giving of a bribe which has been accepted," and so this defendant, to bring himself within the provisions of this section, must show that he testified before this commission to the giving of a bribe which had been accepted by Russell. He testified to no such thing. On the contrary, he testified that he made no offer of a bribe, that he gave no bribe, but that Russell tried to induce the defendant to give Russell a bribe, a story that the jury have found by their verdict to be without foundation, as upon this trial he repeated the testimony that he had given before the commissioners.

The fallacy that pervades the whole argument of the appellant is that we are not dealing with the question as to whether or not the defendant could have been compelled to testify before the investigations, but as to the effect of his testimony. We may assume that he was an unwilling witness before the commission, as a subpœna had been issued for his attendance, and his willingness to obey such a subpœna when he understood it was issued made him none the less a compulsory witness. But even though called as a witness, the extent to which he was required to testify in such an examination was not prescribed by law, nor was it determined by any ruling of the commissioners. He answered freely and voluntarily all questions that were asked him, and certainly, if he considered that any question that was asked could involve his prosecution for a crime, he could have claimed his privilege and objected to answering. But no testimony that he gave, no answer to any question that was asked him, in any way tended to convict him of a crime, for all of his testimony was to the effect that he was perfectly innocent of any crime; that it was Russell who was the offender. It seems to me it would be an abuse of any statute giving to a person who assisted in the conviction of a criminal immunity because of such assistance, when his whole testimony was for the purpose of clearing himself from a charge that had been made against him. I, therefore, think that the defense of this defendant, whether pleaded as a bar, or a motion to dismiss the indictment, or a motion to direct an acquittal, was without any justification.

[9] As before stated, there is no other question in this case that requires consideration. The defendant was clearly guilty. His claim that he was retained as a lawyer to procure the discharge of Thaw, when he had just been admitted to practice in this state, for which

148 N.Y.S.—2

Thaw was willing to leave in his hands as a fee the sum of $25,000, is too preposterous on its face to receive any consideration. If the contract had been that Thaw would pay him $25,000 when he succeeded in procuring his release, there might have been some basis for the claim; but the paying of such a fee in advance, if it was for legal services, was preposterous, while it is entirely consistent, and is only consistent, with the fact that the money was given to the defendant to bribe Russell, and was so understood by the defendant when he received it. The defendant's legal qualifications, if bribery was the scheme, were quite immaterial. The important thing was that he was intimate with Russell who, it was assumed, would have considerable power in securing Thaw's release, and the whole case shows beyond a doubt that the scheme from the beginning was for the payment of this $25,000 to the defendant to procure the release of Thaw by the bribery of Russell or those in charge of the asylum. On the whole testimony, the jury were entirely justified in convicting the defendant, and no error was committed which requires any consideration, or which would justify a reversal.

The judgment is therefore affirmed.