In the Matter of Caroline Burdy, Petitioner, against Joseph M. Conroy, as County Judge of Queens County, et al., Respondents.

Supreme Court, Special Term, Kings County, April 25, 1944.

*E. F. W. Wildermuth* and *Patrick Dempsey* for petitioner.

*James E. Doherty* for Joseph M. Conroy, respondent.

*Joseph Lonardo, amicus curiæ.*

Cuff, J. At a trial before the County Court and jury sitting in Queens County, the petitioner who happened to be the wife

of the defendant then on trial for violating section 1897 of the Penal Law (illegal possession of gun), refused to answer questions when called as a witness to testify against her husband, basing her refusal on the constitutional ground that her testimony " may tend to degrade or incriminate me." The court directed the witness to make answer and when she refused, he adjudged her in contempt, fining her fifty dollars or stand imprisoned for thirty days.

This is a proceeding to review and annul that adjudication under authority of article 78 of the Civil Practice Act. The parties agree that the procedure is correct. The finding of the learned Trial Judge is based upon contemptuous acts committed in his presence. The offense is a criminal contempt.

The facts are: While petitioner and her husband were living apart, she appeared in the Felony Court and gave incriminating evidence against her husband with the result that he was held for the action of the Grand Jury and indicted as aforesaid. At the subsequent trial in the Queens County Court, the witness testified that she was the defendant's wife; that they had been separated; that their home was No. 31–13 Thirty-fourth Street, Astoria, New York City; that her two children lived with her and that her husband came to their home on August 7, 1944, at 11:30 at night.

Asked to relate " What happened when he came there? ", petitioner answered: " I refuse to answer on the ground that may tend to degrade or incriminate me." When asked if she had testified before a city magistrate, she made the same reply. The court directed that she answer the last question, but she persisted in her refusal.

The next question put to petitioner inquired if she had been " in the Felony Court, Queens County, on August 12th, 1943? " She again refused answer.

The District Attorney then resorted to that form of interrogating pursuant to which he read the questions and the answers from the testimony taken in the Felony Court, and inquired in substance " Were you asked that question at the Felony Court, and did you make that answer? "

Defendant's attorney interrupted the question as soon as its purport was evident and before the Felony Court question and answer had been read, with an objection that the District Attorney was trying to impeach his own witness. The learned trial court ruled that the question merely sought to ascertain if the witness had testified in open court and overruled the objection. The District Attorney's question was then completed. It con-

tained the following quoted question from the Felony Court record: "Q. What happened then with respect to you and your husband? A. My husband knocked at the door and I wouldn't let him in and he came through the window with the gun. He told me that he would kill the four of us."

Petitioner repeated her "I refuse to answer" formula. The prosecutor urged a direction from the bench and, over defendant's attorney's objection, the learned Trial Judge ruled where it is apparent self incrimination or self degradation will not ensue, it is for the court to determine if a witness may decline to answer. The trial court also observed that petitioner had testified before concerning the same matters. That prompted a request by defendant's counsel for the court to advise the witness that she had a right to refuse to answer on the ground that her testimony would tend to incriminate her in spite of the fact that she had testified concerning the identical subjects in the Felony Court or before the Grand Jury. The request was refused by the court. Instead he directed that answer be given.

Thereafter a series of questions followed, in each of which testimony from the Felony Court record was read, concluding with "Did you make that answer to that question when you testified in the Felony Court?" The petitioner, in each instance claiming her constitutional privilege, refused to answer.

The testimony as quoted from the Felony Court record in the subsequent questions follows: "Q. Did he have a gun in his hand when he came through the window? A. He had it in his back pocket and took it out when he got in the kitchen. Q. Through which window did he come, front or rear of the house? A. Front of the house. Q. Then he came through the rooms and went into the kitchen, did he? A. Yes. Q. After he got in the kitchen, as I understand it, he drew a gun? A. Yes. Q. From what pocket did he draw that gun? A. Back pocket. Q. What did he say to you and what did you say to him? A. He said if I didn't go back with him that he would kill the four of us, two children, myself and him. Q. Did you get the gun away from him? A. Yes, I did, and he took the bullets out, four bullets, that was in it, he took out because he said if he left it laying around it would do harm. Q. How did you come to find two bullets in his pocket? A. He went to bed and I found them in his pants. Q. He went to sleep? What did you do with that gun and bullets which you found? A. I put it in a paper bag and put it under my couch. Q. What did you do with it eventually? A. Then I brought it to the police station. Q. Did you deliver it to a police officer? A. I did."

At the conclusion of the interrogating the learned County Judge ruled: " I hold you in contempt of this court for refusing wilfully and contumaciously to testify on the questions put to you by the District Attorney." The text of the hearing clearly indicates that the questions which the court, counsel and the witness had in mind were those wherein the testimony of the Felony Court was repeated and the query was in effect, " did you so testify."

Petitioner objects because the respondents have failed to submit a proper return or answer and seeks to have a final order in her favor entered on default. An opposing affidavit has been submitted on behalf of the County Judge. Its contents are not in form or substance of the kind intended by the statute, which provides: " * * * respondent shall serve upon petitioner, and file with the Clerk of the Court, a verified answer. The answer must contain proper denials and statements of new matter, as in an action, and must set forth such facts as may be pertinent and material to show the grounds of the action taken by the respondent which is complained of; * * *" (Civ. Prac. Act, § 1291).

There can be no doubt that there has been a lack of conformance to the statute by the respondents. No determination, however, need be made on that basis. If it were, the court would be disinclined to do more than direct that respondents file their answers. The entire minutes of the trial are annexed to the moving papers. The reasons for the County Court's action are fully before this court. The affidavit submitted by the respondent County Judge repeats that which was stated at the trial. Other points, which are determinative in character, will be considered.

The New York Constitution provides: " * * * nor shall he be compelled in any criminal case to be a witness against himself " (art. I, § 6). The United States Constitution in that precise language (U. S. Const., 5th Amendt.) raises the same barrier in favor of accused persons. There is no dispute about the presence of the inhibition in our organic laws. The question is: Did petitioner waive the constitutional privilege by giving testimony voluntarily in the Felony Court? In their briefs respondents point to no authority which closes the door to the claim of privilege because the incriminating or degrading testimony has been voluntarily given at another proceeding.

The learned County Judge observed that although he recognized the witness to be the sole judge of whether the answers would tend to degrade or incriminate her, there was reposed

in the trial court discretion to determine whether the testimony would actually have the effect claimed. There is support for the rule. It has application where the refusal is obviously a device to give protection to some person other than the witness, and where it is apparent that the answer would not accomplish the results claimed. (See *People ex rel. Lewisohn* v. *O'Brien*, 176 N. Y. 253, 266.) It could be that the witness completely or partially falsified in the Felony Court. · The truth may have been that she owned the gun. She gave testimony before the Grand Jury. What she said there was not before this court. It could be that it .was false. Perhaps her testimony before the Grand Jury and in the Felony Court was the truth. To recount the treatment accorded to her and her children by her husband could " tend to degrade her " in spite of the fact that she had once before told the story in public. There is no telling the degree of publicity, if any, which the original story received to compare it with the number who would have learned of the kind of husband she had by her repeating the story. Only the witness knew those things, and the law makes her the judge of the effect of her answers. It was not apparent that her answers would not degrade or incriminate her. This court is not unmind·ful of the fact that the questions which the Trial Judge directed that the witness answer would have only disclosed that she had " so testified " in the Felony Court. Assuming that her testimony in the Felony Court was false (and, again, only she and her husband knew that) when she answered the questions put to her in the County Court affirmatively, she would have supplied one link in the prosecution of her for perjury. She would have admitted that she had given the false testimony. She would have been a witness against herself with respect to a part of the prosecution. That the fact she would have supplied by her answering was readily provable through other sources may not justify the refusal to recognize her claim of privilege.

Because petitioner had once (Felony Court) given the degrading or incriminating testimony was no bar to her asserting the claim of privilege when directed to repeat it at the trial of her husband in the County Court. (*People* v. *Cassidy*, 213 N. Y. 388, 396.) Application granted. Petitioner is discharged.