UNITED STATES v. STANDARD SANITARY MFG. CO. et al.

(District Court, E. D. Michigan, S. D.　March 8, 1911.)

Nos. 5,163–5,164.

CRIMINAL LAW (§ 42*)—IMMUNITY.

 Act Feb. 25, 1903, c. 755, 32 Stat. 904 (U. S. Comp. St. Supp. 1909, p. 1142), as amended by Act June 30, 1906, c. 3920, 34 Stat. 798 (U. S. Comp. St. Supp. 1909, p. 1168), prohibiting prosecution for a transaction concerning which accused, in obedience to a subpœna, gives testimony in a proceeding under the anti-trust law (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), does not immunize persons who have filed answers under oath in such a proceeding.

 [Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 42.*]

The Standard Sanitary Manufacturing Company and others being under indictment, the government demurs to pleas of immunity. Pleas overruled.

See, also, 187 Fed. 232.

Edwin P. Grosvenor, Sp. Asst. Atty. Gen., and Frank H. Watson, U. S. Atty.

Stevenson, Carpenter & Butzell, Noble, Jackson & Hubbard, Lyon & Hunter, and Moritz Rosenthal, for defendants.

DENISON, District Judge (sitting by designation). The act of February 25, 1903 (32 St. L. 904), as amended June 30, 1906 (34 St. L. 798), provides that no person shall be prosecuted for or on account of any transaction concerning which he, in obedience to a subpœna, gives testimony under oath, in any proceeding under the so-called Sherman act or anti-trust law.

Before the filing of these indictments, the respondents here were made defendants in an equity suit brought by the United States, under section 4 of the anti-trust law to enjoin the same alleged combination which forms the basis of these indictments. The bill did not waive oath to the answer, and so, in legal effect, demanded a sworn answer. The defendants did answer under oath. They now claim freedom from criminal prosecution, and rely upon the terms of the immunity statute above recited.

It is clear that the answers were under oath, and were demanded and given in such a "proceeding under" the anti-trust act as the immunity statute contemplates. The only question is whether these answers constitute "testimony (or) evidence under oath," or "in obedience to a subpœna."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It is also clear that the filing of the answer may be thought of as something done "in obedience to a subpœna," because it is required by law as a step following upon the issue of a chancery subpœna.

So, too, it cannot be doubted that an answer under oath was, under the old equity practice and in a proper case, evidence, and often controlling evidence, upon final disposition of an equity suit.

It follows that, without any distortion of the language into grotesque or unknown form or meaning, the respondents can make it spell immunity in this case; but it does not follow, even under the rules of construction of criminal statutes, that respondents must have a favorable interpretation just because such interpretation is possible. The true criterion must be the fair and reasonable meaning— the sense in which it is probable that Congress used the chosen words.

. Under the equity practice, an answer is a pleading as is a plea or demurrer. This is the primary, and in the typical case the only, function of the answer. Under certain conditions, it took on a secondary or incidental function, and proffered itself as evidence. This was because of the situation attendant upon a bill of discovery. Bills of discovery are now practically unknown, and it. is at least doubtful (particularly under this section 4) whether such a bill can now be maintained at all without aid from some other ground of equity jurisdiction. It is not to be inferred, as respondents say, that the individual defendants were joined in the equity suit only for the purpose of obtaining discovery. The reasonable inference is that they were joined so as to obtain an effective injunction.

Bills of discovery being substantially discontinued, the resulting evidential character of the answer has practically disappeared. Skilled equity counsel remember this historical, but obsolescent, function of the answer; but probably laymen generally, as well as most lawyers in the code states and many lawyers in other states, would now be surprised to be told that an "answer" is "testimony." I cannot think that Congress so intended.

The same conclusion follows from considering the "subpœna" subject. The common understanding, I think, of "giving testimony in obedience to a subpœna" or "producing evidence in obedience to a subpœna," would be that reference was had to the familiar witnesses' subpœna, and not to the equity summons. The latter meaning is not impossible, but is, to me, strained and unnatural.

Even if the answer is "evidence," it is not happily described as "produced in obedience to" the subpœna. True, the subpœna gives the defendant notice that he must answer, but this compulsion comes not from the writ but from the rules of the court. When the subpœna, with the possible aid of contempt proceedings, has produced an appearance, it has exhausted its function as a writ.

Further, if an answer may be thought to be filed, "in obedience to" the subpœna and is framed with evidential purpose, its character as evidence is only inchoate. It may never become evidence. It must be, for 30 days, subject to exceptions, and then, if it escapes or survives exception, it must wait another 30 days for replication or for setting down. Only then· does it get permanent status. This consid-

eration does not seem to be important, but it emphasizes the difference between an answer and ordinary "testimony" or "evidence."

It is not conclusive against a plain construction that it leads to rather absurd results in some cases, but this may furnish an additional reason for not adopting an unusual meaning. If respondents are right, immunity results from a sworn answer to a bill not waiving the oath, but it does not result from an unsworn answer to the same bill, nor from an answer, sworn or unsworn, to the same bill containing a waiver, nor from a sworn plea to the same bill in either form, though all these answers and this plea might contain an identical disclosure. The injury to defendants is the same in each supposed case; for an admission can be used against the person admitting just as well in one case as in the other. It is not likely that immunity was intended to depend on whether a pleader omitted to waive an oath, or that it is important whether such omission was deliberate or inadvertent.

I see no significance, helpful to respondents, in the fact that in this immunity statute reference is made to persons who gave testimony, and in the commerce and labor statute reference is made to persons who "gave testimony as witnesses." Although possible reasons are suggested for a distinction, I see no substantial reason, and I should draw the inference that Congress uses the two phrases indiscriminately, intending that one should mean the same as the other.

Respondents urge that the full right of immunity must be maintained, else the government cannot get the information necessary to convict. This is true; but it does not aid in deciding what this act means. I feel confident that the construction I have adopted will not cripple any necessary governmental activity. I have not been able to conceive a case where it will be necessary to get information regarding a crime by filing a bill and demanding answer under oath.

Defendants under such a bill as was filed here are not, with my construction of this immunity statute, in danger of losing any constitutional rights. They may absolutely refuse to incriminate themselves by any statement, by whatever name it may be called, and with or without oath. It may not be pleasant to take this position, but such is the constitutional method of preserving a constitutional right.

There is no difference between the respective pleas of the different individual respondents, and, with my view of the statute, no difference between the seven different pleas of each respondent. In so far as pleas 5, 6, and 7 go beyond the first four, they state either legal conclusions, immaterial matters, or matters of defense under a general plea of not guilty. All the pleas of immunity will be overruled.