THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ARTHUR R. LORCH, Defendant.

Court of General Sessions of County of New York, June 16, 1939.

470

Thomas E. Dewey, District Attorney [Stanley H. Fuld, Assistant District Attorney, Charles C. Tillinghast, Jr., Deputy Assistant District Attorney, of counsel], for the plaintiff.

Robert J. Fitzsimmons [David Miller of counsel], for the defendant.

KOENIG, J. The defendant seeks a dismissal of the indictment charging him with crimes of forgery and larceny.

The facts, briefly, are as follows: On September 22, 1938, the defendant, an officer and director of Arthur R. Lorch, Inc., was arrested on the complaint of Milton J. Bach, a stockholder of the corporation — owning one-half of its capital stock — an officer and also a creditor. The indictment, filed on February 3, 1939, charges the defendant with misappropriating certain funds of the corporation and with forgery. After the defendant's arrest and prior to his indictment, Bach, in November of 1938, commenced a civil action, embracing the same subject-matter set forth in the indictment, in the Supreme Court of New York county, against the defendant for an accounting and for other relief pursuant to section 60 of article 6 of the General Corporation Law. An amended verified complaint was filed and on January 11, 1939, the defendant interposed a verified answer.

The defendant urges that section 131 of the General Corporation Law, considered with section 248 of the Civil Practice Act, entitles

him to a dismissal of the indictment for the reason that the service of a verified answer to a verified complaint involving the same transaction as set forth in the indictment granted him complete immunity from prosecution for the acts charged.

Section 248 of the Civil Practice Act, in so far as pertinent, provides that, even though a complaint is verified, the verification of an answer may be omitted, "where the party pleading would be privileged from testifying as a witness concerning the allegation or denial contained in the pleading."

Section 131 of the General Corporation Law, as amended in 1938, recites: "In an action, brought as prescribed in articles sixth, seventh or eighth, a stockholder, officer, transferee, or agent of a corporation is not excused from answering a question, relating to the management of the corporation, or to the transfer or disposition of its property, on the ground that his answer may expose the corporation to a forfeiture of any of its corporate rights, or will tend to incriminate him, or subject him to a penalty or forfeiture; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding." The statute is in accord with the principle that the immunity given be as broad as the privilege against self-incrimination which is taken away. (*Counselman* v. *Hitchcock*, 142 U. S. 547.)

It seems settled that a party has a constitutional privilege against being compelled to verify a pleading which might incriminate him (*Travelers Ins. Co.* v. *Mulligan*, 231 App. Div. 222; *Thompson* v. *McLaughlin*, 138 id. 711), and that privilege exists irrespective of the provisions of section 248 of the Civil Practice Act. (Const. art. 1, § 6.) Therefore, it follows that a defendant may serve an unverified pleading, unless the Legislature intervenes and relieves him completely from the risk of prosecution for any crime thereby revealed. The real inquiry, therefore, is whether section 131 of the General Corporation Law purports to grant immunity for the service of a verified answer. The defendant contends that it does, arguing that the provision required him to verify the answer and that, being so constrained, he was granted an immunity for testimony so compelled.

Analysis of the pertinent provisions establishes that the constitutional right of a party to refuse to verify his answer in a civil proceeding is not affected by section 131, and demonstrates that no such result as that contended for by the defendant is justified.

A statute of this character should be strictly construed and, certainly, the mind should not force itself to bring an individual's act within its terms unless it is both within the letter and the intendment of the grant. " To establish immunity from conviction of a crime, the offender must bring himself clearly within some provision of law which grants such immunity." (*People* v. *Anhut*, 162 App. Div. 517, 526; affd., 213 N. Y. 643.)

An amnesty statute to be valid need not include within its purview all forms of self-incrimination; the Legislature in its judgment may limit the nature and extent of the indemnity. A statute may compel a witness to answer " a question, relating to the management of the corporation, or the transfer or disposition of its property," in exchange for immunity and not grant a similar immunity for the act of verifying a pleading. The only constitutional limitation is that " whatever immunity it purports to give is the safe and sure possession of any witness who invokes it after being brought within its terms." (*Matter of Doyle*, 257 N. Y. 244, 252.)

A valid distinction between testimonial compulsion at a trial or examination before trial and the mere filing of a verified answer is clearly revealed in the light of the reasons underlying a grant of amnesty. While the latter act is within the constitutional privilege of self-incrimination, it by no means follows that it is also within the grant of the immunity statute which affords such relief where the person testifies in fact (answers questions) as a witness. The immunity itself must be as broad as the privilege destroyed (*People ex rel. Lewisohn* v. *O'Brien*, 176 N. Y. 253), but a statute which destroys only a part of the privilege need not in return grant immunity for more than the particular kind of disclosure which it compels. If the form of incrimination is not within the scope of the statute, the witness may still refuse to reveal the incriminating matter. (*Matter of Doyle*, 257 N. Y. 244; *People* v. *Cahill*, 193 id. 232, 239, 240.)

The defendant relies on *Matter of Peck* v. *Cargill* (167 N. Y. 391, 395). This case involved revocation proceedings of a liquor tax certificate. O'BRIEN, J., who wrote the opinion, based the reversal upon two grounds, *first*, that the petition filed for the revocation of the license was insufficient in form, and, *second*, that the statutory enactment compelling the filing of a verified answer was a violation of the constitutional rights of the licensee. In so far as his opinion discusses the latter question, viz., the constitutional principles involved in the filing of a verified answer, it did not receive the approval of any other member of the court. (See *Erratum*, 168 N. Y.; *People* v. *Rosenheimer*, 209 id. 115, 122.)

Whatever the force of Judge O'Brien's reasoning may be, he recognizes, however, that self-incrimination may manifest itself in many forms when he states that " the constitutional immunity from every species of incrimination may be effectually violated by a law which compels a person to plead or deny upon oath any charge involving a criminal offense without regard to the form of the investigation as by a law compelling him to testify as a witness. The privilege of silence secured by the Constitution applies to the one case as well as the other."

A party may refuse to verify a pleading as he may refuse to testify as a witness, but it is within the province of the Legislature to offer immunity for the one act and not for the other. The language of the statute must be reasonably construed to effectuate the legislative intent. A verified pleading (which is an affidavit, Civ. Prac. Act, § 7, subd. 3) may be deemed equivalent to testimony for one purpose and not for another dependent solely on the statutory enactment and its scope. In construing section 829 of the Code of Civil Procedure, the court, in *Farmers' Loan & Trust Co.* v. *Wagstaff* (194 App. Div. 757), held that an affidavit was not testimony within the meaning of that term as employed in the particular section under consideration: " The word ' testimony ' as therein used and as generally employed involves the idea not only of a sworn statement but also of one made in a judicial proceeding where there was opportunity for an opposing party to cross-examine " (p. 762).

A similar construction must be attributed to the language of section 131. There is a sound basis for thus limiting the immunity. The clear intent of the Legislature was to deny to a witness the right of exercising his privilege of silence at an examination before trial or at the trial itself so as to permit those interested in the corporation to obtain relief from persons wronging the corporation, its stockholders or creditors. This purpose is no further advanced by the fact that a party, charged with such wrongdoing, serves a verified answer rather than one not under oath. " It is not likely that immunity was intended to depend on whether a pleader omitted to waive an oath, or that it is important whether such omission was deliberate or inadvertent." ( *United States* v. *Standard Sanitary Mfg. Co.*, 187 Fed. 229, 231.)

To hold otherwise would be to place undue emphasis on form rather than on substance. In no aspect are the objectives sought to be achieved affected by the formal answer of a litigant. The obvious purpose of the statute " is to make evidence available and compulsory that otherwise could not be got. We see no reason for supposing that the act offered a gratuity to crime." (*Heike*

v. *United States*, 227 U. S. 131, 142.) Basically the offer of immunity is given only in exchange for *disclosures* and it is patent that the allegations of an answer which furnish no real information are not within the reason for the grant. Amnesty is not lightly or arbitrarily given; it is based on the principle that the disclosures sought are of a nature broad enough and substantial enough to justify relief from criminal prosecution. The objective to be attained is not trifling in character and the State is willing to destroy the privilege and grant immunity only for a disclosure by a witness that is calculated to carry out a broader purpose than merely establishing the witness' responsibility for crime.

The defendant argues plausibly, but the result he seeks would impede the administration of criminal justice in that a civil suit commenced by a private litigant would assure an indemnity without the acquiescence or consent of any public official — a departure from the long-recognized and historical practice of allowing the responsible official charged with the enforcement of the criminal law to determine whether to utilize a witness in exchange for amnesty. Under such circumstances, it is not improbable that a willing tool could be found who would constitute himself a litigant against a criminal corporate officer to relieve the latter from the penal consequences of his wrongdoing. While the court has no concern with the wisdom or propriety of legislation, it should not strain to reach a result, fraught with so serious and grave a danger to the due administration of the criminal law.

In the final analysis the defendant has amnesty only if he *must* verify; there is no compelling conclusion on this record that he acted under compulsion of law. In the proper exercise of his constitutional rights he might have refused to verify the answer. But this he did not do. A voluntary disclosure will not suffice. (*People* v. *Rosenheimer, supra,* at p. 123.)

For the reasons set forth, the motion to dismiss the indictment is denied.