SOUTHBRIDGE FINISHING Co., Plaintiff, *v.* JULIUS GOLDING, Doing Business as J. G. Textile Company, Defendant.

Supreme Court, Special Term, New York County, June 15, 1955.

*Paul, Weiss, Rifkind, Wharton & Garrison* for plaintiff.

*Louis I. Gribetz* for defendant.

WALTER, J. Upon plaintiff's examination of defendant before trial defendant declined to answer substantially every question put to him upon the ground of his constitutional privilege against self incrimination, and plaintiff moves to compel him to answer the questions or to strike out his answer to the complaint because of his failure to do so.

Plaintiff's complaint charges defendant with the commission of a crime, viz., entering into a conspiracy to cheat and defraud plaintiff and doing fraudulent acts pursuant to such conspiracy, with resulting damage to plaintiff; and the examination of defendant before trial was sought and ordered for the purpose of obtaining proof of the allegations of the complaint.

Plaintiff thus indisputably is engaged in an attempt to prove by defendant's own testimony that defendant committed a crime; and there hence is a strong prima facie showing that defendant's claim of his constitutional privilege is well founded.

Defendant opposed the motion for examination upon the ground, among others, that because the complaint charges criminal acts he could not constitutionally be required to submit to examination. The court nevertheless granted the motion, but in so doing the court said '' The party to be examined may claim any privileges that are available at the examination ''; and defendant claimed the privilege very promptly after the examination began.

Yet, because defendant (1) interposed a verified answer to the complaint in which he denied the allegations of crime and pleaded affirmative defenses, and (2) swore in his affidavit in opposition to the motion for the examination that the facts are contrary to plaintiff's allegations, plaintiff now contends that defendant has waived his right to claim his constitutional privilege.

I think the contention plainly untenable.

To the uninitiated and the naive and also to some other people whom it would not occur to me to so describe, it is manifestly and necessarily inconsistent for a man to assert that he is innocent and yet claim that his answers to questions may tend to incriminate him. In their view, nothing that an innocent man truthfully says in answer to any question may tend to incriminate him, and, therefore, the assertion of innocence necessarily demonstrates that the claim of possible incrimination is not made in good faith, and, conversely, the claim of possible incrimination is necessarily an admission of guilt. But, as many courts have pointed out in numerous cases over a long period of time, that bit of logical formalism has no relation to reality.

It is of course well-settled law that no inference of guilt can be drawn from an assertion of the privilege; and I am of the opinion that, except in occasional instances under comparatively rare circumstances, such an inference is just as inadmissible in the realms of morals, logic and justice as it is in a courtroom.

Rarely, if ever, can the guilt or innocence of a person be deter-

mined from one single act, fact, or circumstance. Generally, if not always, the prosecutor who would convict must piece together many acts, many facts, and many circumstances; and the advocate who would obtain an acquittal must meet the prosecutor's chain of evidence with another chain of other acts, facts, and circumstances. Many an innocent man has found himself unwittingly enmeshed in a combination of circumstances which point strongly to his being guilty of some crime. Sometimes such a man escapes prosecution only because the prosecutor lacks one detail which is essential to a reasonable chance of obtaining a conviction and is obtainable only from the man himself. Sometimes such a man, upon being prosecuted, is able to obtain acquittal only because he cannot be compelled to give proof of that missing detail; and occasionally some innocent man is actually convicted of a crime he did not commit.

Denial of guilt hence is not a confession that the claim of possible incrimination is not put forward reasonably and in good faith; and, conversely, assertion of the privilege against self incrimination is not a confession of guilt. (Some of the recent discussions of the subject may be noted: 40 Amer. Bar Assn. Journal 404, 502, 582, 588; 41 Amer. Bar Assn. Journal 307; Griswold, The Fifth Amendment Today, Harvard Univ. Press [1955]; *Maffie* v. *United States,* 209 F. 2d 225; see 8 Wigmore on Evidence [3d ed.], § 2272.)

Plaintiff here does not go to the length of asserting that defendant waived the privilege by denying guilt. Counsel quotes and underscores defendant's assertion that the facts are to the contrary of the complaint's allegation, and thus gives an intimation that he was about to make that assertion, but elsewhere in his brief he concedes that a plea of not guilty (or, in civil law parlance, a general denial) is not a waiver of the privilege, and rests his contention of waiver upon the grounds that defendant verified his answer to the complaint and in addition to denials set up affirmative defenses.

I think the contention rests upon a wholly untenable theory of the doctrine of waiver.

Counsel first states the doctrine as being that a witness waives the privilege " by voluntarily testifying about the subject matter in issue ", which I think is clearly contrary to the authorities; and he then argues that a verified pleading is " testimony " and hence by serving a verified pleading defendant " voluntarily testified " and hence waived the privilege, which I think is an untenable *non sequitur.*

The privilege of course must be asserted in order to be availed of, and what is disclosed in testimony given before the privilege is claimed cannot be recalled or obliterated by a subsequent claim of the privilege; but waiver does not result from merely " voluntarily testifying about the subject matter in issue ".

Where upon the trial of an indictment against him the accused defendant elects to exercise his statutory privilege of testifying on his own behalf, he becomes subject to cross-examination like any other witness and in that sense may be said to have waived his constitutional privilege against self incrimination (*People v. Tice,* 131 N. Y. 651; *People v. Rosenheimer,* 209 N. Y. 115, 123; *People v. Trybus,* 219 N. Y. 18, 24; *People v. Russo [Barletto],* 251 App. Div. 176; *People v. Shapiro,* 308 N. Y. 453; *Brown v. Walker,* 161 U. S. 591, 597, 598; *Fitzpatrick v. United States,* 178 U. S. 304).

But in *People ex rel. Taylor v. Forbes* (143 N. Y. 219) a witness who testified under oath before a grand jury that he had no connection with the matter under investigation (the injection of poisonous gas into a room in which university students were holding a banquet) was held not to have waived his right to claim his privilege of not answering further questions designed to show that he had some connection.

Similarly, in *Matter of Siegel v. Crawford* (292 N. Y. 651), it was held to be erroneous to compel a witness to answer merely because he had answered earlier questions on the subject.

In *Arndstein v. McCarthy* (254 U. S. 71), the claim that by verifying and filing bankruptcy schedules the constitutional privilege had been waived was specifically rejected. The court there said (p. 72): " The schedules standing alone did not amount to an admission of guilt or furnish clear proof of crime and the mere filing of them did not constitute a waiver of the right to stop short whenever the bankrupt could fairly claim that to answer might tend to incriminate him."

In *Brown v. Walker* (161 U. S. 591, 597, *supra*), the statement was: " Thus, if the witness himself elects to waive his privilege * * * *and discloses his criminal connections,* he is not permitted to stop, but must go on and make a full disclosure."

In *McCarthy v. Arndstein* (262 U. S. 355), it was pointed out that the decision in *Arndstein v. McCarthy* (*supra*) did not rest upon the ground that bankruptcy schedules are essentially different from testimony but upon the ground that the privilege is not waived by any disclosure that does not amount to an admission of guilt or of incriminating facts.

In *Foster* v. *People* (18 Mich. 266), cited in *Arndstein* v. *McCarthy* (254 U. S. 71, 72) and *McCarthy* v. *Arndstein* (262 U. S. 355, 358, 359), it was said (p. 274) to be received doctrine that where a witness has not actually admitted criminating facts he may unquestionably stop short at any point and determine that he will go no further in that direction; that he may judge that his protection does not require him to avoid replying concerning some facts, whereas to others the tendency is, or seems to him, more direct and incriminating.

So, too, in *United States* v. *Costello* (198 F. 2d 200), it was held that neither an assertion that one always had upheld the Constitution and the laws nor the giving of nonincriminating answers to prior questions was a waiver of the privilege.

Finally, in *Rogers* v. *United States* (340 U. S. 367), strongly relied upon by plaintiff and believed by high authority to be the last expression of the doctrine of waiver, the holding was that the privilege had been waived *because petitioner had freely answered self-incriminating questions.*

The rule as to waiver of the constitutional privilege thus seems to me to be that, apart from those instances in which the defendant in a criminal case voluntarily takes the stand upon the trial of the indictment against him, the waiver occurs, not when the party claiming the privilege " voluntarily testifies about the subject matter in issue ", but only when that party gives testimony which is actually incriminating.

*Schoeps* v. *Carmichael* (177 F. 2d 391), certiorari denied (339 U. S. 914), is not to the contrary, because the holding there was, not that any sworn statement is a waiver of the privilege, but that the privilege had been waived by making *incriminating* statements to an inspector after being warned that the statements might be used in subsequent proceedings.

It also seems to me that a more accurate statement would be that after actually incriminating testimony has been given the privilege cannot be availed of, not because the privilege has been waived, but because the incriminating testimony having been already given the claim that further testimony would incriminate is factually untenable.

It logically follows that the service of a verified answer which denies the charges of crime is not a waiver of the privilege, and that the privilege is not waived by the service of such an answer even though the answer adds to the denials affirmative defenses which do not contain incriminating admissions; and it has been so held (*Mayer* v. *Mayo*, 176 App. Div. 93, 94; *Woolson Spice*

*Co.* v. *Columbia Trust Co.*, 193 App. Div. 346; *Ex Parte Ferguson,* 268 P. 2d 71 [Cal.]).

In some of the cases holding that verification of an answer to a pleading which charges a crime cannot constitutionally be required, the courts have said that a verified pleading is testimony (*Matter of Peck* v. *Cargill,* 167 N. Y. 391; *Thompson* v. *McLaughlin,* 138 App. Div. 711; *Sunley* v. *Badler,* 33 N. Y. S. 2d 642); but the underlying basis for such holding is that in cases ·in which truth requires an admission of the charge in whole or in part a requirement of verification would be a requirement that the defendant give incriminating evidence against himself. The holding, in other words, is that a party has a constitutional privilege against being compelled to verify a pleading which might incriminate him (*People* v. *Lorch,* 171 Misc. 469, 471; *Sunley* v. *Badler, supra,* p. 644); and it seems to me clear that that affords no justification whatever for the notion that when the answer is a complete denial of the charge, or a complete denial plus affirmative defenses which do not in themselves constitute incriminating admissions, the voluntary and unnecessary addition of an oath to the answer is a waiver of the privilege.

In short summary, the privilege is *waived,* or, more accurately I think, is rendered factually *untenable,* only when (apart from the instances of a defendant taking the stand upon the trial of an indictment against him) the party asserting the privilege has actually given incriminating evidence against himself (as distinguished from "voluntarily testifying about the subject matter in issue"); and as the service of even a verified answer which denies the charges of crime, or a verified answer which, in addition to such denial, sets up affirmative defenses which are not in themselves incriminating, is not the giving of incriminating evidence, it necessarily follows that the service of such answer is not a waiver, and the claim of waiver in this case consequently must be rejected.

Some of the questions as to which defendant claimed the privilege have an appearance of being entirely innocuous, and the privilege of· course can be invoked only in order to ward off a real danger as distinguished from a remote or speculative possibility of danger (*Mason* v. *United States,* 244 U. S. 362). On the other hand, the privilege is against answering questions which *may tend to incriminate* (*Counselman* v. *Hitchcock,* 142 U. S. 547; *People ex rel. Lewisohn* v. *O'Brien,* 176 N. Y. 253) and as plaintiff here confessedly is engaged in an effort to prove by defendant's own testimony that he committed the crime which

plaintiff charges against him it cannot be said that as to any of the questions the privilege is not invoked in good faith to ward off a real danger. (See *People ex rel. Taylor* v. *Forbes,* 143 N. Y. 219, *supra; Hoffman* v. *United States,* 341 U. S. 479; *United States* v. *Costello,* 198 F. 2d 200, *supra; United States* v. *Coffey,* 198 F. 2d 438; *United States* v. *Weisman,* 111 F. 2d 260; Dixon, The Fifth Amendment and Federal Immunity Statutes, 22 Geo. Wash. L. Rev. 447, 474–480, and Recent Extensions of the Witness' Privilege Against Self-Incrimination, 53 Col. L. Rev. 275.)

The motion is accordingly denied.