Breitel, J. (dissenting).
This appeal raises an issue of first impression. There is no disagreement among the court that a plaintiff may waive the privilege against self incrimination by bringing an action concerning the privileged matter (Levine v. Bornstein, 7 AD 2d 995, affd. 6 N Y 2d 892; 3 Weinstein-KornMiller, N. Y. Civ. Prac., § 3126.15). Nor is there any disagreement that, in merely defending an action, the privilege of a defendant need not be waived, and, indeed, is not waived by such defense alone. Thus, it has been held that a defendant need not verify his pleading if self incrimination be entailed (Travelers Ins. Co. v. Mulligan, 231 App. Div. 222; Kellogg v. Match Supply Co., 165 App. Div. 885; 3 Weinstein-Korn-Miller, op. cit., § 3020.10; see, also, CPLR 3020, subd. [a], excepting from verification privileged matter).
The precise question is whether a defendant in a civil action preserves his privilege against self incrimination on an examination before trial in the action, although on pretrial motions made by him he had stated his version of the privileged matter.
According to plaintiff Steinbrecher, during May and June, 1959, defendant Wapnik .sold 17 used automobiles to plaintiff, purportedly on behalf of Robert Ezersky. As a result of State and Federal criminal investigations into organized stolen car rings, it turned out that the cars had been stolen and sold to plaintiff as part of a conspiracy to sell stolen cars to reputable automobile dealers. Defendant was indicted in Queens and Bronx *367 Counties as well in the United States Eastern District of New York for his complicity in these transactions. Eventually, he was acquitted in the State courts hut convicted in the Federal prosecution.
In July, 1959, almost 10 years ago, plaintiff brought this action against defendant and others, to recover his payments of $33,925 on the ground of fraud. On August 14,1959 defendant served a verified answer containing general denials. It is settled law that he was not required to do so, notwithstanding section 250 of the then applicable Civil Practice Act (Travelers Ins. Co. v. Mulligan, supra; Kellogg v. Match Supply Co., supra; cf. CPLR 3020, subd. [b], par. 1). While arguably this voluntary verification might constitute a waiver of the privilege, it hardly seems fair to so regard it (cf. Meyer v. Mayo, 176 App. Div. 93; Southbridge Finishing Co. v. Golding, 208 Misc. 846, affd. 2 A D 2d 882). In any event, in light of defendant’s subsequent actions, it is not necessary to consider the effect of the voluntary verified answer on the privilege against self incrimination.
One week prior to service of the summons and complaint plaintiff obtained an order of arrest in the action against this defendant. Bond was posted by defendant in order to secure his release. In August, 1959 defendant moved to vacate the order of arrest. In support of his motion, defendant submitted a largely argumentative affidavit in which he disputed the time and circumstance of the onset of their acquaintanceship and the occasion for their meeting. Moreover, by deviously worded denials, the affidavit in effect asserted that the cars had been purchased from Ezersky, that defendant knew no more of the ownership of the cars than did plaintiff, that he was not a member of any car-stealing ring, and that he had not participated in any scheme to defraud plaintiff. Defendant also filed a reply affidavit much the same in form and effect as the first. The motion was denied in October, 1959.
Almost one year later, in June, 1960, on the verge of the anniversary of the arrest bond, defendant made a second motion to vacate the order of arrest. And he again filed an affidavit in support, adding to his other grounds, it is interesting to observe, delay in prosecution of the action. His reply affidavit, filed in support of this second motion, rather than obliquely denying knowledge of the transactions, averred: ‘ ‘ I have asserted, and *368 I repeat, that if the facts charged by plaintiff are true with respect to the co-defendants herein, I had no knowledge of or connection with the fraudulent acts charged to them. I acted in perfectly good faith, advancing money in reliance that the transactions were bonafide.” This motion was denied in July, 1960.
Prior to this second motion, plaintiff sought to examine defendant before trial. The examination was never taken inasmuch as the defendant’s attorney, by letter in December, 1959, advised that his client would claim his privilege against self incrimination. The examination was then adjourned pending conclusion of the criminal proceedings againt the defendant. In December, 1960, the Bronx County prosecution having been concluded, plaintiff again requested an examination and defendant again indicated he would claim his privilege because other prosecutions were still pending. Treating this repeated expression of intention as a refusal to submit-to an examination before trial, plaintiff moved, on June 15,1961, to strike the defendant’s answer on that ground. Special Term denied the motion finding that defendant “ does not refuse to submit to the examination ”. The court directed the examination to be held on July 11, 1961.
The examination before trial was held on July 13, 1961 at which time defendant refused to answer any questions relating to the transaction and concerning averments set forth in his several affidavits.
On a subsequent motion made by plaintiff, Special Term struck defendant’s answer, the court stating that defendant “ may not interpose a verified answer, submit affidavits in support of his motion and then refuse to answer questions at the examination before trial.” This was on November 14, 1961. Defendant appealed, but with lagging steps. The appeal was perfected December 11, 1963. On April 9, 1964 the Appellate Division unanimously affirmed, without opinion, the order of Special Term. He was always represented by counsel, even during part of his imprisonment from July, 1963 to February, 1966, except in this court (20 A D 2d 969 [Brief and Record on file in Appellate Division]; see Steinbrecher v. Public Serv. Mut. Ins. Co., 20 N Y 2d 659, 660).
Not until almost five years later and over seven years since the order was signed at Special Term was the appeal argued in *369 this court. In the meantime, all of the criminal prosecutions have been ended, and plaintiff has not yet been paid. The action is almost 101 years old.
This extended recital was necessary in order to present the flavor and substance of defendant’s tactics through which he sought variously to use the privilege or “ waive ” it, as it suited his purpose, not only to delay the action and avoid examination, but also in making efforts to rid himself of the arrest order and bond requirement hanging over his head. This is not the stuff of a purely defensive posture to which a waiver of the important privilege of self incrimination does not attach. Rather, defendant used the privilege affirmatively to obstruct plaintiff and the prosecution of the action and, on the other hand, to suit his purposes revealed his own version of the transaction, albeit sometimes in guarded and indirect language, to deny plaintiff his provisional remedy. But even the indirect language does not detract from his assertions of fact ultimately made as to the kind of automobile transaction, the real parties involved, and that he was innocent of any culpable knowledge in arranging the sale of the stolen cars.
So far as they have gone, the teachings of the cases are clear. Where a party has testified to a transaction, he may not claim his privilege to prevent disclosure, by cross-examination, of the contrary version (Brown v. United States, 356 U. S. 148). True, in Arndstein v. McCarthy (254 U. S. 71; McCarthy v. Arndstein, 262 U. S. 355) the Supreme Court had held that in the involuntary examination of a bankrupt there was no waiver until a disclosure is made amounting to “ an actual admission of guilt or incriminating facts ” (262 U. S., p. 359). However, this broad rule requiring inculpation to effect a waiver was expressly limited in the Brown case, to an instance where the witness is compelled to testify (supra, p. 155; see, also, Rogers v. United States, 340 U. S. 367, 373, n. 15). The Brown case arose out of a civil suit for denaturalization brought against petitioner. After being called as an adverse witness and asserting her privilege, petitioner voluntarily testified in her own behalf. Although her testimony “ did not amount to ‘ an admission of guilt or furnish clear proof of crime, ’ but was, on the contrary, a denial of any activities that might provide a basis for prosecution ”, the court held that petitioner had waived her right to invoke the privilege *370 on cross-examination concerning “ the matters relevantly raised by [her] testimony” (356 U. S., pp. 154, 157).
Consequently, this defendant’s flat denial of any “ knowledge or connection with the fraudulent acts charged ’ ’ set forth in his fourth and last affidavit if uttered on direct examination would have barred any subsequent assertion of the privilege (United States v. Brown, supra). As in the Brown case there was no compulsion but rather defendant acted voluntarily in his own behalf and in furtherance of his own interests. The question is then whether the waiver in the affidavits holds true as a waiver in the examination before trial.
Of course, the privilege against self incrimination is not waived in a proceeding or action different from the one in which the testimony is given (People v. Cassidy, 213 N. Y. 388, 394—396). The Cassidy case stated that testimony “‘before a coroner’s inquest or a grand jury or other preliminary and separate proceeding ’ ” would not serve to waive the privilege “ ‘ for the main trial ’ ” (id., p. 396). The “ same proceeding ” rule is not to be confused with the view that a waiver should be limited to a single continuous examination in which the initial waiver occurred (see 8 Wigmore, Evidence [McNaughton’s rev. ed., 1961], § 2276, p. 470). That is another matter indeed, and there is no settled rule. So, too, in a criminal case where the defendant testifies at a pretrial or trial motion to suppress he is not deemed, by statute or otherwise, to waive his privilege. This is so, for otherwise a defendant would be placed in the cruel dilemma of waiving one constitutional right in order to assert another. But to hold that such a rule applies in a civil case as this where a defendant is not forced to choose between constitutional rights would convert the privilege from its intended role as a “ humane safeguard against judicially coerced self-disclosure ”* into a potent weapon in the hands of a crafty defendant.
This case involves a single action. The affidavits and subsequent claim of privilege occurred in different pretrial procedures in the same action. In such case, the defendant seeks the best of contradictory tactics — disclosure and privilege. This is indeed a double-edged use, usually denied to a party (cf. Levine v. Bornstein, supra).
*371 Nor is a defendant in such a situation faced with a hopeless dilemma. For a time this defendant actually obtained adjournments of proceedings while the criminal actions were pending, and in a proper case could have sought relief from the court to stay proceedings. Langemyr v. Campbell (21 N Y 2d 796) and Oleshko v. New York State Liq. Auth. (21 N Y 2d 778) are not to the contrary. Those cases simply held, that in the one case of an arbitration and in the other of an administrative hearing, there was no abuse of discretion in proceeding with the final hearings. In the Oleshho case the one claiming the privilege had been successfully challenged with inordinate delays in attempting to forestall a ruling on the merits. That is not the problem in this case. Here, a determination of the merits was, of course, forestalled, but, more important, defendant played a hit-and-run game with disclosures and claims of privilege and never asked the court for a straightforward postponement of the examination before trial on the ground that it would embarrass him in the pending criminal actions.
A defendant, or any party, .should not be able to use the privilege in a duplicitous way. In another context the Supreme Court said, “ [T]his Court .should not be ignorant as judges of what we know as men” (Watts v. Indiana, 338 H. S. 49, 52). Therefore, defendant’s tactics should be viewed as having shaped the result—a waiver of the privilege in this action. On the other hand, a consistently defensive use of the privilege against self incrimination should never allow of waiver. This applies even to a defendant, who, perforce, takes- defensive postures by way of pleadings or denials alone. Otherwise, a defendant would be required to default in an action if he would preserve his privilege. But this does not mean that a defendant, who chooses to litigate aggressively within the pending action, can avoid the choice of disclosure or claim of privilege — anymore than he can avoid that dilemma upon the trial on the merits. In either event, so long as he is unable to obtain an adjournment on proper grounds, he must make his choice.
Certainly, and finally, it will be .small comfort to plaintiff for him to examine defendant before trial about a conspiracy, now some ten years after the event.
Accordingly, I dissent and vote to affirm the order of the Appellate Division.
*372 Judge® Burke, Bergan and Keating concur with Chief Judge Fuld ; Judge Breitel dissents and votes to affirm in an opinion in which Judges Sgileppi and Jasen concur.
Order reversed, with costs, and case remitted to Special Term for further proceedings in accordance with the opinion herein.

 Brown v. United States (356 U. S. 148,156).